## GLENN *v.* GARTH.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 1160. Submitted November 28, 1892. — Decided January 23, 1893.

The mere construction by the highest court of a State of a statute of another State, without questioning its validity, does not deny to it the full faith and credit which the Constitution and laws of the United States demand, in order to give this court jurisdiction on writ of error. This is especially true when there are no decisions of the highest court of the latter State in conflict with the construction made by the court of the former State.

MOTION to dismiss, or affirm. This was an action commenced October 26, 1886, in the Supreme Court of the city,

county, and State of New York, by John Glenn, as trustee, against David J. Garth, Robert A. Lancaster, and Samuel J. Harrison, impleaded with others, to recover the amount of two assessments made by the courts of the State of Virginia upon the stock and stockholders of the National Express and Transportation Company, a corporation of that State.

The defendants denied that they had at any time become the holders or owners of shares of the capital stock of the corporation by assignment and transfer from the original subscriber or subscribers for said shares or otherwise, and denied that they at any time became and were received and accepted by the corporation as stockholders in and members thereof for the number of shares alleged, or any shares whatsoever.

The record of the judicial proceedings of the courts of Virginia put in evidence established the basis of plaintiff's right to recover against the stockholders of the company for the assessments in question, and evidence was adduced on both sides bearing on the question of the liability of defendants as stockholders.

The trial court directed a verdict for the plaintiff, and, on motion of defendants' counsel, ordered their exceptions to be heard in the first instance at the general term and that judgment be suspended in the meantime. At the general term defendants moved on their exceptions for a new trial, and the Supreme Court sustained the exceptions, set aside the verdict, and granted a new trial. From this order the plaintiff appealed to the Court of Appeals, giving the stipulation, exacted by the New York statute in that behalf, that if the order granting a new trial should be affirmed there should be judgment absolute against him. The Court of Appeals affirmed the order appealed from, with judgment absolute against the plaintiff. The remittitur and record were sent down to the Supreme Court, with directions to enter the judgment and to proceed according to law, whereupon the Supreme Court directed the judgment of the Court of Appeals to be made the judgment of that court, with costs to be adjusted, and that defendants have execution. The costs were adjusted and

judgment therefor entered May 10, 1892. Application was made in the Court of Appeals for a reargument, which was refused in due course. A writ of error from this court to the Supreme Court of New York was then allowed, and now comes before us on motion to dismiss.

The opinion of the Supreme Court in general term is given in the record, though not reported, as appears in 60 Hun, 584. The case is therein stated in substance as follows: Defendants Harrison, Garth and Lancaster were engaged in the business of bankers, and brokers in stocks, bonds and securities, in New York, under the firm name of Harrison, Garth & Co. They had a customer named Ficklin, who desired to purchase shares of the National Express and Transportation Company upon a margin. Garth agreed to carry the shares for Ficklin, that is, to pay for them as Ficklin purchased them, upon receipt of a sufficient margin to secure the firm against loss. This stock was not listed upon the New York Stock Exchange, but Ficklin informed Garth that he could pick the shares up at Baltimore and other places. Some time after the making of this arrangement several lots of the shares were purchased, presumably on Ficklin's orders, through McKim & Co., brokers in Baltimore, and, in accordance with Garth's promise to carry them, Harrison, Garth & Co. settled the account of McKim & Co. for what they had disbursed in the transaction. The certificates of stock were sent on from Baltimore by McKim & Co. to Harrison, Garth & Co., as security for the advances thus made by the firm to Ficklin. The invariable custom in such cases is for the seller to deliver the certificates to the broker with a blank assignment and power of attorney to transfer on the books of the company endorsed thereon. Such a thing as placing stock in the name of the firm, when thus acting as brokers, had never once occurred in all its business life. Instead of following the custom and forwarding the ordinary and proper documents, McKim & Co. had the shares transferred on the books of the company into the name of Harrison, Garth & Co., and it was the certificates naming the firm as the owners of the shares which were sent on to defendants. This act of McKim & Co. was not only contrary to

precedent, but as a matter of fact entirely unauthorized. The moment Garth observed the forms of the certificates, he repudiated the transfer to his firm, and endeavored to effect a retransfer. He knew that the stock was assessable and liability might result from the acceptance of the certificates made out in the name of his firm, but at the same time he could not prudently return the certificates to the company and demand their cancellation for the reason that the firm had advanced their money upon the security of the shares. He notified Ficklin and required him to have the stock taken up and transferred from the firm's name; he also returned the certificates to McKim & Co. with instructions to have them sold and transferred from the name of the firm. There was no delay or hesitation; disaffirmance followed at once upon notice of the unauthorized act. Some attempt was made upon the trial to prove that Harrison, Garth & Co. dealt directly with McKim & Co., but the evidence was insufficient even to amount to a conflict on that point.

The court ruled that no person could be made a stockholder without his knowledge or consent; that there is nothing in any statute which makes the books of a company incontrovertible evidence on that head; that the actual fact may always be inquired into, and if it be shown that the transferee upon the books never consented to accept the shares, the transfer to him is simply null and void; that these defendants had not by any neglect or default brought themselves within any just principle of estoppel; and upon a careful review of all the evidence adduced upon the trial the court found " that the defendants never became stockholders of the corporation represented by the plaintiff, and consequently are not responsible for the unpaid assessments sought to be recovered in this action."

The opinion of the Court of Appeals is reported in 133 N. Y. 18, 36, 43. The case was fully considered and discussed and the same conclusions arrived at. Among other things the learned judge who delivered the opinion of the court said : " But it is further claimed that under the statutes of Virginia, as expounded by their courts, the transfer upon the books of the

company is conclusive upon the defendants, and makes them stockholders at least as to creditors, irrespective of the circumstances of the registry. It is obvious that any enactment which enabled a wrongdoer to load upon a stranger the heavy responsibilities of a stockholder without his knowledge or assent would be an outrage upon the rights of the individual, not to be expected. The statutes of Virginia accomplish no such wrong, but operate reasonably within certain well-defined limits. We are referred to the Code of 1860, chapter 57 and section 7. That regulates the rights of the assignor of stock, appearing as owner upon the corporate books, relatively to his assignee who does not so appear, and to the creditors of and subsequent purchasers from the former, and vests the title in the assignee; not, let it be observed, for all purposes, but 'so far as may be necessary to effect the purpose of the sale, pledge or other disposition,' and subject to the provisions of the 25th section. That is in these words : 'A person in whose name shares of stock stand on the books of the company shall be deemed the owner thereof as regards the company.' The plain meaning is that the corporation which has acknowledged the ownership and accepted its evidence and admitted it upon its records shall not be at liberty to dispute it. Its meaning is not that it shall be conclusive against the alleged stockholder. Indeed, in *Vanderwerken* v. *Glenn*, (85 Virginia, 9,) the court state the rule to be that the record upon the corporate books is *prima facie* evidence of the ownership, and after examining all the cases referred to I find none which venture any further."

And in the opinion upon the motion for reargument it was further said : " Of course, the question discussed is vital to the controversy. Under the law, both of this State and of Virginia, one may be, as we said in the former opinion, a holder of stock without being, in the full sense of the term, a stockholder. Our statute of 1848, as to manufacturing corporations, (c. 140, § 16,) and that of 1850, as to railroads, recognized that a person may hold shares as collateral without being liable to assessment; and it rests upon the obvious ground that the pledgor, in whose name the stock is registered, re-

mains the general owner, notwithstanding the pledge, and the company cannot treat him otherwise, nor practically claim that both pledgor and pledgee are at the same time stockholders of the same stock. The pledgor remains liable; the pledgee never becomes so. The statute of Virginia (Code of 1860, c. 57, § 25) makes those and only those stockholders, 'as it respects the company,' whose names are registered on its books as such; and that enactment, thus requiring an acceptance and recognition of the stockholder by the corporation, shows that it is a contract relation which is contemplated and involves an actual assent on both sides. The seeming intimation ventured on behalf of the appellant that the effect of that act is to make one conclusively a stockholder whose name was registered, whether he knew and assented or not, is too plainly unendurable to require serious discussion. No one can be made a stockholder without his consent, express or implied. And so there is no view of the subject which can dispense with proof of that assent by the defendants as a vital and necessary element of the plaintiff's case."

*Mr. William C. Clopton, Mr. Robert L. Harrison* and *Mr. John R. Abney* for the motion.

*Mr. Burton N. Harrison* opposing.

This court has jurisdiction upon the writ of error to review the judgment of the state court here complained of. The Federal question is clear, and the denial of the plaintiff's right under the Constitution of the United States is manifest. The plaintiff in error claimed under public acts and judicial proceedings of the State of Virginia. The refusal of the Courts of the State of New York to give to those acts full faith and credit, and to give to those judicial proceedings the same effect in their operation upon the title of this plaintiff in error to recover from these defendants in error, as they have by law and usage in the State of Virginia itself, (which is the full faith and credit required by the Constitution,) constitutes a proper case for review in this Court under Sections 709 and

905 of the Revised Statutes of the United States. *Hoyt* v. *Shelden*, 1 Black, 518; *Murdock* v. *Memphis*, 20 Wall. 590;. *Gross* v. *United States Mortgage Co.*, 108 U. S. 477; *Adams County* v. *Burlington & Missouri Railroad*, 112 U. S. 123; *Philadelphia Fire Ins. Co.* v. *New York*, 119 U. S. 110; *Walter A. Wood Co.* v. *Skinner*, 139 U. S. 293.; *Dale Tile M'f'g Co.* v. *Hyatt*, 125 U. S. 46; *Hawkins* v. *Glenn*, 131 U. S. 319; *Glenn* v. *Liggett*, 135 U. S. 533; *Lewis* v. *Glenn*, 84 Virginia, 947; *Vanderwerken* v. *Glenn*, 85 Virginia, 9; *Williams* v. *Taylor*, 120 N. Y. 244; *Sands* v. *Campbell*, 31 N. Y. 345; *Berrien* v. *Wright*, 26 Barb. 208; *McQueen* v. *Babcock*, 41 Barb. 337; *Hubbell* v. *Medbury*, 53 N. Y. 98; *Fincke* v. *Funke*, 25 Hun, 616; *Van Wagoner* v. *Terpenning*, 46 Hun, 425; *Wilkinson* v. *First Nat. Ins. Co.*, 72 N. Y. 499; *Murray* v. *Charleston*, 96 U. S. 432; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116; *Furman* v. *Nichol*, 8 Wall. 44; *Green* v. *Van Buskirk*, 5 Wall. 307; *Crapo* v. *Kelly*, 16 Wall. 610.

*Mr. John Howard,* opposing, made the following points:

I. That the whole case depended upon Virginia law and judicial proceedings, and the facts as shown.

II. That the court below decided the case without respect thereto, and based its decision upon the common law and its usages and customs, and the private intention of the defendants in error, instead of upon their actual dealings with this stock, subject to the Virginia Code.

III. That the decision necessarily involved, by legal intendment and implication, a denial of the Federal rights involved.

IV. And that there was no separate and independent ground broad enough to support the judgment, except by excluding the Federal rights involved in the very nature of the proceedings and proofs, and in the decision of the court below adversely to the rights claimed.

V. That a judgment of reversal should be rendered, upon the merits, in accordance with the leading case of *Murdock* v. *Memphis*, 20 Wall. 590; and that this court should now render a judgment such as the New York court ought to have done.

And after having paid the judgment the defendants in error will have a clear remedy not only against whoever wrongfully caused the stock to be transferred to their names upon books of the company, (if anybody did,) but against their assignees of the stock for indemnity. *Kellock* v. *Enthoven,* L. R. 9 Q. B. 241.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

We are unable to discover any sufficient ground upon which to rest jurisdiction of this writ of error. The requirement of section 1 of Article IV of the Constitution, that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State," is referred to by counsel, as also section 905 of the Revised Statutes, which provides for the authentication of the acts of the legislature, and of the records and judicial proceedings of the courts, of any State or Territory, and concludes : "And the said records and judicial proceedings so authenticated shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." And it is contended that the New York courts did not give to the statutes and jurisprudence of Virginia, and to the judicial proceedings in Virginia, the faith, credit and effect that they had by law and usage at home. As to judicial proceedings, the action of the Virginia courts was in no manner questioned by the decision under consideration. There was no judgment against the defendants *in personam* in Virginia, and their liability as stockholders was not determined by the decrees which had passed there against the company. Nor were the validity and effect of the statutes of Virginia denied, although, so far as relied on, their proper construction and operation were considered by the Court of Appeals.

Our attention has been called to no case in which it has been held by the highest tribunal of Virginia that the statutes referred to, (Code Va. 1860, c. 56, c. 57; Code 1873, c. 57,)

were intended to be conclusive of the liability of a party, who had never subscribed for stock or been a transferee thereof in fact, because of the presence of his name upon the books of the company without his consent or assent thereto.

In *Vanderwerken* v. *Glenn*, 85 Virginia, 14, the decision was, as stated by the Court of Appeals, that the appearance of the party, sought to be charged, on the company's books as a stockholder, was *prima facie* evidence of his being such, and this was conceded by the New York court. It is said that that was a mere common law legal presumption, and had nothing to do "with the statutory rights and obligations of actual dealers in the stock whose names appeared upon the books as holders of the stock with their knowledge and without dissent on their part, so far as the company and its creditors were concerned;" and that the New York court "went off upon the common law rule of evidence as to the appearance of stock upon the stock books, in respect of strangers, and utterly ignored and rejected the constitutional credit and effect due to the said statutes of Virginia in respect of persons actually dealing in such stock, and whose names appeared upon the books of the company as holders and owners of stock in the ordinary and regular course of its business as conducted under those statutes." But this involves in large part a consideration of the case upon the merits, and begs the question whether upon the facts these defendants occupied the position plaintiff ascribes to them.

If we were to assume jurisdiction of this case, it is evident that the question submitted would be, not whether the decision of the New York court was against a right specially set up and claimed under the Constitution of the United States, or necessarily arising, but whether in that decision error intervened in the construction of the statutes of Virginia. If every time the courts of a State put a construction upon the statutes of another State, this court may be required to determine whether that construction was or was not correct, upon the ground that if it were concluded that the construction was incorrect, it would follow that the state courts had refused to give full faith and credit to the statutes involved,

our jurisdiction would be enlarged in a manner never heretofore believed to have been contemplated.

The distinction between the construction of a statute and the validity of a statute has frequently been adverted to by this court. *Baltimore & Potomac Railroad* v. *Hopkins*, 130 U. S. 210, and cases cited. In *Grand Gulf Railroad and Banking Co.* v. *Marshall*, 12 How. 165, 167, 168, the case was brought up from the Supreme Court of Louisiana, and involved an assignment by a corporation of Mississippi under the laws of that State. Mr. Chief Justice Taney, delivering the opinion of the court, after stating that, " in order to give this court jurisdiction the record must show that the point was brought to the attention of the state court and decided by it," for the obvious reason that " the party is authorized to bring his case before this court, because a state court has refused to him a right to which he is entitled under the Constitution or laws of the United States; but if he omits to claim it in the state court there is no reason for permitting him to harass the adverse party by a writ of error to this court, when, for anything that appears in the record the judgment of the state court might have been in his favor if its attention had been drawn to the question," goes on to say that " it appears that the decision turned upon the construction (not the validity) of the act of Mississippi of 1840 ; and upon a question of merely local law, concerning the right by prescription claimed by the trustees. Nothing is said in relation to the constitutionality or validity of this act of Mississippi, and the opinion of the court clearly shows that no such question was raised or decided." The writ of error was therefore dismissed for want of jurisdiction. It does not seem to have occurred to the Chief Justice that the writ could be maintained upon the ground of a denial of full faith and credit to the Mississippi statute by the construction given by the Louisiana court.

This record may be searched in vain for any proof that, as matter of fact, the public acts of Virginia had, by law or usage in Virginia, any other effect than was given them in New York; nor can the contention of counsel, that the

Virginia statutes should be construed according to their views, be treated as the equivalent of the express assertion of a right arising under the Constitution or laws of the United States.

*Writ of error dismissed.*