# CHARLESTON

ROLLER v. MURRAY *et als.*

Submitted June 15, 1911.   Decided October 22, 1912.

1.  JUDGMENT—*Full Faith and Credit—Courts of Sister State.*
     A decision of a court of a state of the Union, founded upon a law local or peculiar to that state, is entitled, by virtue of section 1 of Article IV of the Constitution of the United States, and the Act of Congress, passed May 26, 1790, to full faith and credit in the courts of another state, in which such local or peculiar law is not recognized.  (p. 162).

2.  SAME—*Res Judicata—Quasi in Rem.*

    A right, question or fact, decided in a proceeding *quasi in rem* and *in personam,* is *res adjudicata* in a subsequent suit between the same parties, to charge or recover. property, not involved in the former suit, if the subsequent suit involves the same right, question or fact.  (p. 168).

3.  SAME—*Res Judicata—Judgment in Suit in Another State.*

    An adjudication which precludes re-litigation of a question in the state in which it took place, may be pleaded in bar in a subsequent suit in another state between the same parties and in which the same matter. is involved and decisive of the issue.  (p. 169).

4.  CONSTITUTIONAL LAW—*"Due Process of Law"—Amendment.*

    Rejection of an amendment to a bill in equity on account of immateriality and delay in tendering it, ample opportunity for an earlier tender thereof having been allowed, and the materiality thereof being doubtful, does not amount to denial of due process of law within the meaning of the Fourteenth Amendment to the Constitution of the United States.  (p. 170).

5.  JUDGMENT—*Conclusiveness—Nature of Judgment—Dissolution of Provisional Injunction.*

    Dissolution of a provisional injunction, before final disposition of the cause, is presumptively not an adjudication upon the merits, and is not conclusive of any question affecting the merits in subsequent proceedings in the suit or another suit, involving the same cause of action, unless it appears that the court founded the order of dissolution upon the decision of such a question.  (p. 171).

Appeal from Circuit Court, Pendleton County.

Action by John E. Roller against Mary H. Murray and others. Judgment for defendants, and plaintiff appeals.

*Affirmed.*

*O. B. Roller* and *John E. Roller,* for appellant.

*Edward S. Conrad,* and *Holmes Conrad,* for appellees.

POFFENBARGER, JUDGE:

The initial question in this cause is, whether a decree of a court of one state of the Union, declaring a contract void or unenforcible, because, under the law of its state, it is champertous, is entitled to full faith and credit, by virtue of section 1 of Article IV. of the federal Constitution and the Act of Congress of May 26, 1790, in another state in which the con-

tract, unaffected by the decision, is valid. In *Roller* v. *Murray*, 107 Va. 527, the contract here involved was declared champertous and enforcement thereof refused. That decision has been invoked here by a plea in bar. For the purposes of the present inquiry, the validity of the contract under the law of this state, viewed independently of the Virginia decision, will be assumed.

The constitutional provision referred to says: "Full faith and credit shall be given in each state to the Public Acts, Records, and judicial proceedings of every other state. And Congress may by general laws prescribe the manner in which such Acts Records and Proceedings shall be proved, and the Effect thereof." An Act of Congress, passed May 26, 1790, in the exercise of the power so conferred upon that body, prescribed the mode of authenticating records and judicial proceedings and then declared, "and the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every other court within the United States as they have by law or usage in the courts of the state from which they are taken." Rev. Stat. (U. S.) sec. 905. The decisions of the federal Supreme Court, construing these provisions and determining their scope and effect, as a general rule, adhere to their letter. The instances in which judgments and decrees are denied, in sister states, the force and effect they have in the states in which they were rendered, are rare. What sometimes seem to be exceptions are not really so. A judgment or decree which the court had no jurisdiction to pronounce may be impeached both at home and abroad. A ground of equitable relief against a judgment is available in the state in which it is rendered as well as in other states. So that, in these instances, the judgment has the same effect in a sister state as it has in the state in which it was rendered. A judgment which does not go to the merits of a claim, merely denies the remedy, as in the case of the statute of limitations, is not always conclusive in a sister state, for the reason that it does not reach the merits of the claim in controversy. *Bank* v. *Donally*, 8 Pet. 361; *Brent* v. *Bank*, 10 Pet. 547; *Stockyards* v. *Railroad Co.*, 118 Fed. 113, 63 L. R. A. 213. It affects only the remedy in the state of its rendition, leaving the validity of the claim unimpaired; and,

since it does not extend to the merits in the home state, it cannot do so in another state. It has no greater effect in other states than it has at home.

A real exception is found in the case of judgments in favor of the state for penalties, inflicted as punishment for crimes and misdemeanors. "This court has no original jurisdiction of an action by a state upon a judgment recovered by it in one of its own courts against a citizen or a corporation of another state for a pecuniary penalty for a violation of municipal law." *Wisconsin v. Pelican Ins. Co.,* 127 U. S. 365. In the opinion in that case, Mr. Justice Gray gives an elaborate and exhaustive exposition of the purpose of the constitutional and statutory provisions here involved and shows that judgments for such penalties are not within their spirit. Another sort of penalty, however, constitutes ground for such exception. To constitute an exception, the penalty must be one within the meaning of international law. In the subsequent case of *Huntington* v. *Attrill,* 146 U. S. 657, the distinction between such penalties and others is clearly marked and a judgment for a sum penal in its nature was upheld, because it was remedial rather than punitive in its nature. The court said: "In the municipal law of England and America, the words 'penal' and 'penalty' have been used in various senses. Strictly and primarily, they denote punishment, whether corporeal or pecuniary, imposed and enforced by the state, for a crime or offence against its laws. * * * But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. They are so elastic in meaning as even to be familiarly applied to cases of· private contracts, wholly independent of statutes, as when we speak of the 'penal sum' or 'penalty' of a bond." The latter class of penalties are regarded as remedial. *Taylor v. Sandiford,* 7 Wheat. 13; *Hyde* v. *Cogan,* 2 Doug. 699; *Woodgate* v. *Knatchbull,* 2 T. R. 148; *Read* v. *Chelmsford,* 16. Pick. 128, 132; *Lake* v. *Smith,* 1 Bos. & Pul. (N. R.) 174. In *Huntington* v. *Attrill,* the court said: "The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to. the individual."

Judgments for strict penalties are excepted because of their local nature. Their purpose is to enforce only the internal public policy of the state. The laws they enforce have no extra-territorial operation. Upon the same principle, judgments in *rem* ordinarily have no force or effect upon any property except that which lies within the limits of the state or country in which they were rendered. "Crimes are in their nature local, and the jurisdiction of crimes is local. And so as to the rights of real property, the subject being fixed and immovable. But personal injuries are of a transitory nature, and *sequuntur forum rei. Rafael* v. *Verelst,* 2 W. Bl. 1055, 1058. Crimes and offences against the laws of any State can only be defined, prosecuted and pardoned by the sovereign authority of that State; and the authorities, legislative, executive or judicial, of other States take no action with regard to them, except by way of extradition, to surrender offenders to the State whose laws they have violated, and whose peace they have broken." Mr. Justice Gray in *Huntington* v. *Attrill,* 146 U. S. 657, 669.

As to the force and effect of judicial proceedings, the states of the Union sustain toward one another, by virtue of the full faith and credit clause of the Constitution and the statute made in execution thereof, a relation different from that of foreign countries. In other words, the judgments of sister states stand upon a higher plane than foreign judgments by reason of these provisions. Speaking of the former class, Woodruff, Judge, in *De Brimont* v. *Penniman,* 10 Blatch. 436, 439, said: "Those cases are not deemed to apply to the present, because the Constitution of the United States operates, as between the States, to give them an efficiency not due to a foreign judgment or decree." The constitutional provision itself by its terms ex-cludes from operation among the states a considerable portion of private international law. It gives full faith and credit, not only to the judicial proceedings of every state, but also to its public acts and records. Hence, a law of one state, affecting the rights of persons and property and local in the sense that it differs from the laws of other states, and may be to some extent contrary to their policy, such as would not be recognized and enforced, nor a judgment carrying it into effect recognized, if it were the law of a foreign country, must nevertheless have

full faith and credit in all of the states of the Union. The judgment upheld in *Huntington* v. *Attrill,* cited, was for a penalty imposed upon an individual by a statute of the state of New York, where it was recovered. A suit to enforce it was brought in the state of Maryland in which there was no such statute. The Maryland court refused to enforce it, but the federal Supreme Court held that, in so doing, it had denied the full faith, credit and effect to which the judgment was entitled under the constitution and laws of the United States. If a court of one state refuse to enforce the statute of another state in a case in which it ought to do so, a case in which the statute gives a right, it thereby denies such full faith and credit, because the statute is a public act of another state. *Banholzer* v. *Insurance Co.,* 178 U. S. 402; *Glenn* v. *Garth,* 147 U. S. 360; *Lloyd* v. *Mathews,* 155 U. S. 222. "As between the States of this Union, the comity enjoined by private international law touching the effect to be given to foreign judgments is reinforced and supplemented by the clause in the federal constitution providing that full faith and credit shall be given in each State to the judicial proceedings of every other state, and by the act of Congress, made in pursuance thereof." Minor on Conflict of Laws, sec. 86, p. 188. Judgments in state courts are therefore clearly not open to all the defenses which can be made to foreign judgments. Hence, the adjudications as to the extraterritorial force and effect of such judgments cast practically no light upon the present inquiry. It is governed by the scope and framework of our constitutional system.

The important exceptions already noted contravene the letter of the constitutional provision and are permitted to do so only because they are deemed not to be within its spirit. Subject to the restraint and limitations of the federal constitution, the states have all the sovereign powers of independent nations. These limitations were imposed for the accomplishment of certain purposes; and, to preserve harmony in the constitutional system, the limitations upon the powers of the states are themselves limited to a certain extent, or, rather certain things are deemed not to be within them. The exceptions from the operation of section 1 of Article IV. include only such things as it was the plain purpose of the constitution to leave within

the sole power and jurisdiction of the individual state. It was not contemplated that any state should surrender to another the power to determine what should constitute crimes and public offenses within its borders or the manner or extent of their punishment; nor that any state should say for another what should be sufficient to pass title to land or prescribe the mode of its alienation, descent or distribution, or by what means it should be subjected to the satisfaction of debts, or how questions of title should be litigated. It was upon considerations of this kind that the exceptions already noted were made. These, as well as the requirement that each state give full faith and credit to the public acts, records and judicial proceedings of every other state, seem to have had for their purpose, not the attainment of uniformity in laws, but rather the right of each state to have local and peculiar laws which all others should respect and enforce within certain limitations. To enable it to make and enforce such laws as it desires, each state is permitted to retain limited sovereign power. No other is allowed to interfere with its domestic or internal policy. To allow the courts of another to administer in any degree its criminal laws or determine questions of title would subject the policy of the state to outside interference. On the other hand, the full faith and credit clause and others compel each state to recognize and respect rights acquired by private individuals under the laws of other states, though such laws may differ from its own and vary from its policy.

The import of the decisions already analyzed and the general principles upon which they proceed afford no basis for the claim that the courts of this state may refuse to respect the decision of the Virginia court, because it is founded upon a law of Virginia which does not obtain in West Virginia. That law enters into the judicial proceedings set up here in resistence to this suit and as a bar to it. If it were an affirmative judgment of the Virginia court against the plaintiff here, based upon a statute, instead of the common law as understood in Virginia, it would be entitled to respect and full faith and credit, however different our law might be and even though it were contrary to the public policy of this state. The public acts or laws, records and judicial proceedings of a state are not

:susceptible of control or limitation by other states to the extent to which contracts are. A contract made in one state, to be performed in another, whose public policy it contravenes, need not be enforced by its courts; but the law of another state or judgment of its courts stands upon a higher footing.

This principle is well illustrated by the decision in *Fauntleroy* v. *Lum*, 210 U. S. 230, in which the decision of a Missouri court, allowing recovery upon a transaction in Mississippi, expressly prohibited by a statute of that state, was held to be entitled to full faith and credit in Mississippi, notwithstanding the prohibitory statute. Had the Missouri court properly construed and applied the Mississippi statute, the judgment would have been for the defendant, and, in accordance with the public policy and law of the state of Mississippi; but the federal Supreme Court nevertheless held that the Mississippi Supreme Court, in refusing to enforce it, had denied to it the force and effect to which it was entitled. Although this decision puts it within the power of parties to nullify the statute of a state by invoking the jurisdiction of the courts of another state, the decision seems to accord with others, holding that an erroneous construction of a statute or other law of one state by the courts of another affords no ground for denying its judgment, faith and credit.

Nor do we think this case falls within the class excepted on the ground that the decision is limited to the remedy and does not affect the merits. It was against the validity of the contract itself, asserted by the plaintiff and denied by the defendant. This was a vital element or issue in the case. In declaring the contract illegal or void, the court merely carried into effect a substantive law of the state. It was a court of general jurisdiction and the decision was not founded upon any limitation upon its powers. The distinction is marked in *Provision Co.* v. *Provision Co.*, 191 U. S. 373, and *Fauntleroy* v. *Lum*, 210 U. S. 230. Some courts hold contracts affected by champerty merely illegal, while others declare them absolutely void. Page on Contracts, sec. 345. In either case, the result is a consequence of the defect in the contract, not lack of power in the court to determine the character of the contract.

If the proceeding is to be regarded as having been one *in*

*personam,* the foregoing principles and conclusions would necessarily and clearly make the plea in question good; but, if it was a proceeding *in rem,* having for its object the determination of a question of title to property or of funds, the inquiry goes further.

The allegations of the bills and their prayers for relief, regarded as seeking recovery of an interest in lands or as intended to charge certain lands in Virginia and not elsewhere, with the value of an interest therein, or to obtain a portion of a debt secured by a deed of trust upon such land, and not as seeking in any event or manner a personal decree against the defendant, may give the Virginia suit the character of a *quasi* proceeding in *rem.* Assuming them to have been such, and the purpose of the present suit to affect only lands in West Virginia, so that the lands to be affected are different, the causes of action are not wholly different, for they grow out of the same transaction and the basis of the right in each case is the same contract. In order to charge the Virginia lands, it was necessary to establish that contract. To charge the lands in this state, it is requisite to establish the same contract. The validity of that contract was directly in issue in the Virginia court between the persons who are parties to this suit and the question of its validity actually decided. Had there been no appearance by the defendant in the former suit nor any service of process upon her, and the lands in that state had been subjected to sale or recovered in partial satisfaction of the plaintiff's demand, or his bill dismissed for some reason, there might not have been an adjudication of anything between the parties, binding them except as to the lands sold or recovered, as in the case of sales of property of non-residents under attachment proceedings when there has been no service of process or appearance. But there was an appearance and the validity of the contract, constituting the basis of the plaintiff's claim to the fund or to the land, was actually litigated between the parties and expressly decided against him. That decision obviously and necessarily settles and determines that question in the state of Virginia and precludes any subsequent trial of it there between the same parties in any other litigation in which it may be material, no matter what the form of action or character or measure of relief sought.

Being *res adjudicata* in Virginia, it must be so in West Virginia, because the Virginia decision must have the same faith and credit in all other states that it is entitled to in that state.

"A right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." *Railroad Co.* v. *United States,* 168 U. S. 1.   See also *New Orleans* v. *Bank,* 167 U. S. 371; *Davis* v. *Brown,* 94 U. S. 423; *Poole* v. *Dilworth,* 26 W. Va. 583; *Kingsport* v. *Rawson,* 36 W. Va. 237; *Wandling* v. *Straw et al,* 25 W. Va. 692.   "If a veridct be found on any issue or title, distinctly put in issue in an action of trespass, such verdict may be pleaded by way of estoppel in another action between the same parties or their privies in respect to the same fact or title." *Outran* v. *Morewood,* 3 East 125.

Escape from the effect of this decision is sought upon the theory of a lack of due process of law therein, founded upon the refusal of the trial court to permit an amendment.   The offered amendment endeavored to eliminate the ground of the charge of champerty in the contract by showing that a fund had been provided for the payment of the expenses of litigation by the sale of a portion of the land, and that the agreement of the plaintiff to advance such expenses was made upon the faith of such existing fund, amply sufficient for the purpose.   The said amendment was offered at a very late stage of the proceedings.   The court based its rejection thereof upon two grounds, the delay in tendering it without excuse or explanation and its failure to show a contract materially different from that set up in the original and first and second amended bills.   In disposing of the amendment, the court said:   "The bill had been amended twice already, and after these amendments, and after a thorough argument of the case on its merits, the court announced its decision.   A due regard for the orderly procedure of the court and the rights of the opposing party required that some limit be set to the privilege of amendments.   The amend-

ments now presented are offered without explanation or excuse, and in the main are unsubstantial, and would not change the opinion of the court on the merits of the case." Having said this, the court proceeded to analyze the amendments and show their lack of merit and insufficiency to bring about a different conclusion if they had been filed. The decision relied upon to sustain this contention is *Hovey* v. *Elliott,* 167 U. S. 409, asserting lack of due process in the entry of a decree for the plaintiff, after having stricken out the defendant's answer, because he was guilty of contempt in neglecting to pay into court a certain sum of money. This was a total denial of the right of defense, upon an insufficient ground. In that case, the action of the court was arbitrary and oppressive. Here, the plaintiff had been allowed a hearing. He had filed an original and two amended bills and had no doubt had opportunity to tender the third amended bill long before the submission of the cause. It is certainly competent for a court to say, within reasonable limits, what amounts to a compliance with its rules and the principles of law, respecting the order and limitations of proceedings in a case. Besides, in the opinion of the court, the proposed amendment would not have changed the character of the plaintiff's claim, nor relieved the contract of its infirmity. An erroneous decision in respect to either of these matters would not amount to a denial of due process of law. As to them, it is not a case in which the plaintiff has had no day in court.

It is also urged that the bills in this case make out one different in some respects from that presented in the Virginia court. However that may be, the vital question settled between these parties in the Virginia decision must be re-opened here in order to afford the plaintiff any relief. Mrs. Murray was his antagonist there as she is here. Wheelock and the Chesapeake-Western Company, standing in privity with her, were parties there as they are here, and all the substantial matters alleged in these bills were set up in the former suit.

The dissolution of an injunction against the prosecution of this suit, awarded by the circuit court of Rockingham county, Virginia, at the instance of the Chesapeake-Western Company, after that court had rendered the decision here pleaded in bar,

is relied upon as a former adjudication in favor of the plaintiff, nullifying the effect of said decision. That was a preliminary injunction issued July 16, 1907, and dissolved on the motion of Gen. Roller October 10, 1907, without dismissal of the bill, and in the absence of any demurrer or answer thereto. The order of dissolution, giving Gen. Roller leave "to plead, answer or demurr" to the bill at the next term, shows the case was not finally ended, and, by its recital that the cause was heard upon a printed copy of the record of the other cause in the Supreme Court of Appeals, reveals the status of the proceedings at the time. The decree in the first suit had been entered in May, 1907, and 90 days allowed for procurement of an appeal. An appeal and *supersedeas,* allowed not earlier than August 1907, further suspended its operation. Under these circumstances, lack of ground for a preliminary injunction, if a perpetual one should finally appear to be proper, was obvious. The trial court could not tell whether the decree in the other suit would be sustained or not, as it was under review in the appellate court. The award of an injunction as matter of final adjudication would be as efficacious as a provisional injunction perpetuated by final decree, in case of proof of ground for an injunction. Again there could be no irreparable injury, since the decision, if binding as *res judicata,* could be conclusively pleaded in this suit. Litigation would be lengthened rather than shortened by the injunction suit, which merèly added another to the two already pending. Obviously, therefore, it was unnecessary to predicate the dissolution on the effect of the former decree, and the court did not in terms do so. The tenor of the order clearly indicates the contrary. Had Gen. Roller prevailed in the appellate court, as he no doubt expected to do, he would have set up the reversal by plea or answer and wholly defeated the suit, and the court gave him leave to do so. Our interpretation of the dissolution order negatives intent on the part of the court to declare the former decree not pleadable as an adjudication of the matters involved here.

There is no inflexible rule as to the effect of a dissolution of an injunction upon subsequent litigation between the parties. It depends upon the intention of the court, as disclosed by the state of the pleadings and terms of the order, unless the cause

has been finally disposed of, and even then the dissolution may have resulted from lack of ground for the extraordinary writ, and not carry any implication of a determination of any question affecting the merits. Being interlocutory, the order of dissolution need not affect the merits. Presumptively it does not. Then to make it binding, should it not affirmatively appear to have been an adjudication upon the merits in terms or legal effect? Our decisions say so. *Gallaher* v. *Moundsville,* 34 W. Va. 730; *Fluharty* v. *Mills,* 49 W. Va. 446; *Staley* v. *Railroad Co.,* 63 W. Va. 119. The record fails to show the decree or order of October 10, 1907, involved the merits, and also clearly indicates that it did not.

For the foregoing reasons, the decree complained of must be affirmed.

*Affirmed.*