## PABST BREWING CO. v. NELSON et al.

No. 12600—Opinion Filed May 26, 1925.

(Syllabus.)

1. **Appeal and Error—Review—Sufficiency of Evidence.**

Where a case is tried by the court without the intervention of a jury upon controverted questions of fact, and there is evidence reasonably tending to support the finding and judgment of the trial court, the same will not be disturbed on appeal.

2. **Vendor and Purchaser—Breach of Contract to Convey—Measure of Damages.**

Section 5982, Comp. St. 1921, defines the measure of damages for breach of an agreement to convey an estate in real property.

3. **Same—Absence of Bad Faith and Actual Damages—Nominal Damages.**

In an action for damages for breach of an agreement to convey real estate, where there is no evidence that plaintiff had paid any consideration and no evidence of expenses incurred in examining the title and preparing the necessary papers, and where there is no evidence of bad faith on the part of the defendant, it is error for the trial court to render judgment for more than nominal damages.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by G. A. Nelson against the Pabst Brewing Company, a corporation, in which William Runge intervenes. From a judgment for Nelson, the Pabst Brewing Company appeals. Reversed and remanded.

R. A. Kleinschmidt and Adelbert Brown, for plaintiff in error.

Bridges & Vertrees, for defendants in error.

MASON, J. This action was commenced in the district court of Jefferson county, Okla., by G. A. Nelson, against the Pabst Brewing Company, a corporation, for specific performance of an agreement to convey certain lots in the town of Waurika, Okla. In case specific performance could not be had, plaintiff then prayed for damages for breach of said agreement. The defendant in error William Runge intervened, claiming to be the owner of said property. The case was tried to the court without the intervention of a jury, and judgment was rendered decreeing William Runge to be the owner of said lots. Judgment was also rendered for the plaintiff, Nelson, against the defendant, Pabst Brewing Company, for $350 damages for breach of said agreement.

The evidence, in substance, discloses the following state of facts: That the defendant company was the owner of certain lots with a storage building thereon, located in the town of Waurika, the record title of which was in the name of the secretary and treasurer of said company, Henry J. Stark. as trustee; that the intervener. William Runge, had written said company relative to purchasing same, but had received no reply; that thereafter one W. D. Watson, acting for said William Runge, wrote the defendant company, under date of October 15, 1915, requesting defendant's lowest price thereon.

Further correspondence was had between the company and Watson, after which Watson, in a letter dated November 3, 1919, made an offer of $300. It appears that there was some question on the part of the company as to whether this offer was for the building only, or for both the lots and the building.

On November 14, 1919, the plaintiff, Nelson, wrote said company, requesting its lowest price on said property. The defendant company, under date of November 25, 1919, wrote Watson that it would accept his offer of $300 and advised him that another party was interested in the purchasing of same and asked him to confirm the communication by return mail. On the same date, the company quoted Nelson a price of $300 and advised him that this had been offered to another party and was therefore subject to sale without notice. Watson confirmed the company's letter, under date of November 29th, which was received by the company during the morning of December 2d, in which he also enclosed an Oklahoma form of deed which he requested the company to execute and return to the First

State Bank of Waurika, Okla., which would remit $300 as the purchase price. On the following morning, "December 3, 1919," the company received the following telegram from the First National Bank of Waurika:

"G. A. Nelson has deposited $300 accepting your offer lots 1 and 2, block 5, city of Waurika, asking deed and abstract be sent us for examination and delivery. Answer."

The defendant company replied with the following telegram:

"Regarding Nelson. Will forward deed and abstract within few days."

The two foregoing telegrams constitute the agreement upon which the plaintiff, Nelson, predicates his case.

For reversal of the judgment of the trial court, the defendant company contends that there was no valid contract consummated between it and Nelson. In support of this contention, counsel cite section 4968, Comp. St. 1921, which defines a contract as an agreement to do or not to do a certain thing.

Section 4969, Comp. St. 1921, is then cited, which requires the consent of the parties contracting as one of the essentials to the existence of a valid contract.

They then cite section 4991, Comp. St. 1921, which provides:

"An apparent consent is not real or free when obtained through * * * mistake."

It is contended that the evidence discloses that the agent of the defendant company, who sent the telegram of acceptance to the First National Bank, was under the mistaken belief that the telegram of the bank referred to Watson instead of Nelson, and that therefore the apparent consent of the defendant company was not a real consent.

The record also discloses that on December 4th, the day after the clerk had sent said telegram to the First National Bank, a deed conveying said lots to W. D. Watson and the abstract of title were sent by the defendant to the First National Bank for collection and the bank was requested to remit the $300 which had been deposited therein. Watson, in his letter of confirmation, had requested that the deed be sent to the First National Bank.

The plaintiff denies that a mistake was made and calls attention to several circumstances in the evidence which tend to support such contention.

We probably would conclude, if we were permitted to weigh the evidence, that such mistake had been made, although there is some evidence which reasonably tends to support the contrary view reached by the trial court.

This court, however, is committed to the following rule, which has been repeatedly announced:

"Where a case is tried by the court without the intervention of a jury upon controverted questions of fact, and there is evidence reasonably tending to support the finding and judgment of the trial court, the same will not be disturbed on appeal." Mott v Zimmerman, 100 Okla. 299, 229 Pac. 227.

In the absence of a mistake no contention is made but that the telegrams above set set out are sufficient to constitute an agreement for sale of said real estate.

Plaintiff in error next contends that, if the plaintiff, Nelson, was entitled to recover any damages, the trial court erred in rendering judgment for more than nominal damages.

Section 5982, Comp. St. 1921, provides:

"The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid, and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land."

There is no evidence that any price was paid to the defendant by Nelson, nor is there any evidence of expenses incurred in examining the title and preparing the necessary papers relative to said sale. Therefore, there was no evidence upon which the trial court could render judgment, unless the evidence was sufficient to show the defendant company was acting in bad faith.

Counsel for defendants in error devote several pages of their brief to discussing the evidence as set forth herein and insist that the defendant company acted in bad faith.

We have read the entire record carefully and fail to find the slightest circumstances that would indicate bad faith. There is no evidence which even tends to show that the defendant company knew either Watson or Nelson. Neither is there any evidence that the company had any interest other than to merely liquidate its capital investments in Oklahoma after the brewery business had materially declined for well-known reasons. On the other hand, we think the record dis-

closes that the defendant was attempting to be extremely fair. Both parties were quoted the same price, but Nelson was advised that his offer was subject to sale without notice because the same price had been made to another. There had been some controversy relative to Watson's offer, and for that reason, no doubt, the company in its letter of November 25th, requested a confirmation from Watson by return mail. On the same day, Nelson was quoted the same price as Watson, who had made the first inquiry, but he was advised of Watson's offer, and for that reason the offer was made subject to sale without notice. It is clear that the company was making the offer to Nelson so that he might have an opportunity to purchase said lots in case Watson failed to confirm the company's letter of November 25th.

In Words and Phrases, vol. 1, p. 662, bad faith is defined as follows:

"The term 'in bad faith' is not a technical term, used only in actions for deceit. It is an ordinary expression, the meaning of which is not doubtful. It means 'with actual intent to mislead or deceive another.' * * * A statutory provision that no immaterial misrepresentation in the application shall avoid a policy of insurance, unless it is made in bad faith, means with an actual intent to mislead or deceive, and does not include a misstatement honestly made through inadvertence, or even gross forgetfulness or carelessness. Penn. Mut. Life Ins. Co. v. Mechanics' Sav. Bank & Trust Co. (U. S.) 73 Fed. 653, 654, 19 C. C. A. 316, 38 L. R. A. 33. 70.

" 'Bad faith' and 'fraud' are synonymous. Hilgenberg v. Northup, 33 N. E. 786, 787, 134 Ind. 92.

"Bad faith will not be imputed, unless there is something in the particular transaction which is equivalent to fraud, actual or constructive. Morton v. New Orleans & S. Ry. Co. & Immigration Ass'n, 79 Ala. 590, 617."

" * * * Where there is no actual fraud, and no proof showing that the color of title was acquired in bad faith, which means in or by fraud. this court will hold that it was acquired in good faith." Coleman v. Billings, 89 Ill. 183, 191."

There is nothing in this record that indicates that the defendant tended to mislead or deceive Nelson.

There being no evidence of bad faith on the part of the defendant. company, the trial court erred in rendering judgment for the plaintiff against the Pabst Brewing Company for damages.

Therefore the judgment of the trial court is reversed and the case remanded.

NICHOLSON, C. J., BRANSON, V. C. J., and PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note—See under (1) 4 C. J. p. 884; 2 R. C. L. 203; 1 R. C. L. Supp. 442; 4 R. C. L. Supp. 91; 5 R. C. L. Supp. 81.    (2) 39 Cyc. p. 2109; anno. 16 L. R. A. (N. S.) 768. (3) 39 Cyc. p. 2107; anno. 16 L. R. A. (N.S.) 768.

---

## HARRIS et al. v. GAMMILL et al.

No. 14662—Opinion Filed May 26, 1925.

1. **Bastards—Inheritance from Father—Necessity for Acknowledgment of Paternity.**

Under sections 8057 and 11303, Comp. St. 1921, an illegitimate child cannot inherit any portion of her putative father's estate, unless such putative father acknowledges such child as his own, receives her in his family with the consent of his wife, and otherwise treats her as his legitimate child, or acknowledges the paternity of said child, in writing, in the presence of a competent witness.

2. **Limitation of Actions—Recovery of Land Sold by Administrator.**

Under section 1302, Comp. St. 1921, where M. dies, leaving real estate, and his widow his sole surviving relative and heir at law, lives seven years thereafter. and dying, leaves her son as her sole surviving heir at law, and he lives one year thereafter and dies, leaving a widow and three children, said widow and children are barred from maintaining an action to recover real estate sold by an administrator immediately after the death of said M.

Error from District · Court, Okfuskee County; John L. Norman, Judge.

Action by A. L. Gammill and M. C. Alford against James A. Harris and others, to quiet title to real estate. Judgment for plaintiffs, and defendants bring error. Affirmed.

W. O. Rittenhouse, E. L. Kirby. and John C. Graves, for plaintiffs in error.

T. H Wren, for defendants in error.

PHELPS, J. Babe Mahardy was a Creek freedman, and the land in question was allotted to him as his homestead. On the 2nd day of December, 1908, he died intestate, leaving, surviving, his wife Lizzie Mahardy, also Matilda Tiger, an illegitimate daughter. An administrator was appointed by the county court of Wagoner county, and at an administrator's sale of the land in

question, which was located in Okfuskee county, M. C. Alford became the purchaser, and upon confirmation of the sale by the county court an administrator's deed was issued and delivered to him on December 5, 1910, and on February 16, 1917, said Alford and wife conveyed the land in question, by warranty deed, to A. L. Gammill, said Alford and Gammill remaining in continuous possession of said land from the date of sale to the present time.

On June 2, 1922, A. L. Gammill and M. C. Alford filed their action in the district court of Okfuskee county against a number of defendants, including those who appear here as plaintiffs in error, alleging that the defendants were making some claim of interest in the land which constituted a cloud upon their title, and praying the court for judgment removing said cloud and quieting the title in plaintiffs. Defendant James A. Harris, who appears here as one of the plaintiffs in error, filed his answer and cross-petition asserting title to an undivided one-half interest in the land by reason of a deed from Matilda Tiger, daughter of deceased, said deed being dated December 15, 1908. Defendants Christy Glover, Pearlie Murrell, Eliza Murrell, and Fred Murrell filed their answer and cross-petition, claiming title to, and the right of immediate possession of, the land in question, alleging that at his death he left as his sole surviving heir his wife, Lizzie Mahardy, and that thereafter Lizzie Mahardy died leaving surviving as her sole heir her son Alex Murrell, and that thereafter Alex Murrell died, leaving surviving him as his sole heirs, Eliza Murrell, his widow, and Christy Glover, Pearlie Murrell, and Fred Murrell, his three children. They claim they are entitled to the entire estate by reason of the fact that when Babe Mahardy died, title in fee to the land passed to his widow, Lizzie Mahardy, and that when she died, title to the same passed to Alex Murrell, her only child, and that when he died, title passed to his widow and three children, who are parties plaintiff in error here. The case was tried to the court without the intervention of a jury, and at the conclusion of the trial the court made his findings of fact and conclusions of law, upon which findings of fact and conclusions of law he rendered judgment in favor of the plaintiffs quieting title to the land in question in plaintiffs.

The record and briefs present, primarily, two questions for us to determine. The first, as applied to plaintiff in error James A. Harris, Did the deed from the illegiti-mate daughter of Babe Mahardy, purporting to convey one-half interest in the property, convey any interest whatsoever? And, secondly, as applied to the other plaintiffs in error, Did the administrator's deed, purporting to convey title to the land in question to M. C. Alford, divest the estate of Babe Mahardy of his interest in the land, thereby leaving the plaintiff in error no interest therein; and was their cause of action, if they had such, barred by section 1302, Comp. St. 1921?

The record discloses that there is no dispute that Matilda Tiger, through whom plaintiff in error James A. Harris claims title, was the illegitimate child of Babe Mahardy and Mary Dan, and the trial court found that:

"Babe Mahardy was married to Louisa Mahardy, and that said Babe Mahardy and said Louisa Mahardy lived together continuously, as husband and wife, during all of said years; that Babe Mahardy was never married to Mary Dan; that said Matilda Tiger sometimes visited at the home of Babe Mahardy, and that on one or two occasions the said Babe Mahardy stated orally to witnesses that he was the father of said Matilda Tiger, but that he never admitted, in writing, that he was the father of said Matilda Tiger, and that he never at any time took or adopted her into his family as his child."

Note.—See under (1) 7 C. J. pp. 950, 962; anno. 23 L. R. A. 756, 24 A. L. R. 586; 3 R. C. L. pp. 776, 777; 1 R. C. L. Supp. p. 894, 5 R. C. L. Supp. p. 202. (2) 24 C. J. p. 188.