**AMERICAN FIDELITY & CASUALTY CO., Inc. v. G. A. NICHOLS CO.**

No. 3780.

United States Court of Appeals
Tenth Circuit.

March 21, 1949.

Welcome D. Pierson, of Oklahoma City, Okl. (George F. Short, of Oklahoma City, Okl., on the brief), for appellant.

W. R. Withington, of Oklahoma City, Okl. (Gilliland, Ogden, Withington, Shirk & Vaught, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, HUXMAN, Circuit Judge, and SAVAGE, District Judge.

PHILLIPS, Chief Judge.

· G. A. Nichols Company [1] brought this action against The American Fidelity and Casualty Company [2] to recover an amount paid by Nichols in excess of the coverage of two policies of liability insurance issued by the Casualty Company to Nichols, in satisfaction of a judgment recovered against Nichols by Donald E. Courtney. The cov-

[1] Hereinafter called Nichols.
[2] Hereinafter called the Casualty Company.

erage of the policies aggregated $10,000. The action was predicated on the claim that the Casualty Company breached its duty under the policies and acted in bad faith by refusing offers to compromise the Courtney claim for $10,000. Each of the policies contained these provisions:

"American Fidelity and Casualty Co. * * * (Herein called the Company,) * * * Hereby Agrees * * *

"(3) To defend in the name and on behalf of the Assured any suit brought against the Assured to enforce a claim, * * * for damages suffered or alleged to have been suffered on account of bodily injuries or death, * * * as the result of an accident covered by this Policy * * *

"* * * The Company may settle and pay any claim asserted, whether reduced to judgment or not, * * *

"* * * The assured shall not admit or voluntarily assume any liability nor offer to settle any claim nor incur any expense * * * without the written consent of the Company. The assured shall at all times render to the Company all cooperation and assistance within his power."

In February, 1946, Courtney brought an action against Nichols to recover damages for personal injuries, in the district court of Oklahoma County, Oklahoma.

The Casualty Company was duly notified of such action and elected to defend it in behalf of Nichols. Two days after the accident, the Casualty Company made an investigation thereof and secured written statements from three employees of Nichols. Dan Bradley, the driver of the bus, stated that he examined the bus after the accident; that there was no damage to the right side of the bus from any contact with a nearby steel electric light pole; and that when he brought the bus to a stop, there was a six-inch clearance between the side of the bus and the pole. Howard Cummins, an extra driver for Nichols, stated that he hit Courtney on the arm; that Courtney's arm was outside of the window as the bus passed by the pole and that Courtney's arm caught between the pole and the bus. Floyd Faubion, a dispatcher for Nichols, stated that Cummins struck Courtney while the latter was seated in the rear seat of the bus; that after the bus had started, Courtney extended his right arm out of the window to catch hold of Cummins and Courtney's right arm caught between the bus and the pole, resulting in the injuries to Courtney's arm. The Casualty Company also took Courtney's statement. He stated that he was playing with Cummins and struck at Cummins with his right hand when the bus started; that he pulled his arm in and laid it on the window sill; that the pole hit his elbow and knocked his arm out of the window and that the pole caught his arm and caused the fractures; that he blamed the driver and also blamed himself.

The Courtney case was set for trial on June 17, 1946. Nichols ascertained that the Courtney claim could be settled for $10,-000 and on June 15, 1946, forwarded to counsel for the Casualty Company a written demand that the Casualty Company settle the Courtney claim for $10,000. The demand was received by counsel for the Casualty Company on the morning of June 17, 1946. The Casualty Company refused to make the settlement. The demand was reiterated and refused on June 17, 1946. The Courtney case came on for trial on June 18, 1946. After all of the evidence had been introduced and the case was ready for submission to the jury, counsel for Courtney again offered to accept $10,000 in settlement. Nichols demanded that the offer be accepted. The Casualty Company persisted in its refusal to accept the offer of settlement. The jury returned a judgment for $22,360. An appeal was taken to the Supreme Court of Oklahoma. While the appeal was pending, the case was settled for $15,500, the Casualty Company paying $10,000 and Nichols $5,500. When the Courtney case came on for trial it was discovered that Cummins was no longer employed by Nichols and was not available as a witness.

The evidence introduced in behalf of Courtney in his action against Nichols established these facts: Courtney was a member of the United States Marine Corps, stationed at Norman, Oklahoma. About 1 o'clock a. m., on August 7, 1945, he boarded

the bus of Nichols, at its waiting room at Oklahoma City, as a passenger for hire to return to Norman. He took a seat in the rear of the bus. The windows of the bus were open. Courtney placed his right elbow on the window sill of the bus. When the bus moved out of the station, it struck a pole and the motion of the bus caused his arm to protrude outside the window and strike the light pole, resulting in a compound fracture of his right ulna and radius. An attempt was made to reduce the fractures and an operation was performed and metal plates were installed to hold the ends of the bones in place. The plates installed in the ulna broke and the ulna fracture did not knit. Whether it will knit in the future depends on the success or failure of a bone-grafting operation. Courtney suffered much pain as a result of the fractures and the failure of the ulna fracture to knit and, even if the operation should be successful, the functions of his right arm will be permanently impaired to the extent of 50 to 60 per cent. At the time of the accident, Courtney was 19 years of age. Prior to entering the Marines he had engaged in farming.

Faubion, a witness for the defendant at the Courtney trial, on cross-examination admitted that the right side of the bus struck the pole at a point near the third window from the rear of the bus. He reiterated that admission on redirect examination.

The facts with respect to the accident were testified to by Courtney and a witness who was a passenger on the bus. The facts with respect to the injuries were testified to by two medical experts, and counsel for the Casualty Company offered no evidence in rebuttal thereof.

The issue of whether the Casualty Company acted in bad faith in refusing to accept the offer of settlement was submitted to the jury in the instant case by a special interrogatory and under proper instructions. The jury answered in the affirmative.

When a liability insurance company by the terms of its policy obtains from the insured a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such a relationship. Under policies like those here involved, the insurer and the insured owe to each other the duty to exercise the utmost good faith. While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith.[3]

[2] Whatever may be said about the early refusals of the Casualty Company to accept the proffered offer of settlement, the circumstances existing when it refused to accept the offer to settle for $10,000, made after all the evidence in the Courtney case had been introduced, fully supports the findings of the jury. The evidence introduced in behalf of Courtney established primary negligence on the part of Nichols and refuted any claim of contributory negligence. The medical evidence established that the injuries were serious; that the metal plates installed in the ulna had broken and that the fracture of that bone had not knitted; that a bone-grafting operation was necessary, and that, even if successful, Courtney would still suffer permanently a 50 to 60 per cent loss of the functions of his right arm. Moreover, one of the witnesses for Nichols admitted the bus struck the light pole and the evidence of contributory negligence was very weak. Under that evidence, we think the chance that the jury would return a verdict in favor of Nichols was slight and that it was highly probable a verdict would be returned in favor of Courtney in an amount greatly in excess of the coverage of the policies. In that pos-

3 See National Casualty Co. v. Britt, Okl., 200 P.2d 407, 411–414, and the following cases cited therein with approval: Douglas v. United States Fidelity & Guaranty Co., 81 N.H. 371, 127 A. 708, 712, 37 A.L.R. 1477; Johnson v. Hard- ware Mutual Casualty Co., 109 Vt. 481, 1 A.2d 817, 820; Bolling v. New Amsterdam Casualty Co., 173 Okl. 160, 46 P.2d 916, 917, 919. See, also, Traders & General Ins. Co. v. Rudco Oil & Gas Co., 10 Cir., 129 F.2d 621, 626, 627.

ture of the case, since the offer of settlement was for the full amount of the coverage, litigating the Courtney case to finality would subject the Casualty Company, except for the possibility of the liability here asserted, only to a nominal risk, but would subject Nichols to a very substantial risk.

The policies also contained the following provision: "No action shall lie against the Company for penalty because of the refusal or failure of the Company to pay or satisfy any demands or offers of settlement, whether made before or after judgment, even though such demands or offers of settlement be within the Limits of Liability provided herein. * * *"

The term "penalty" is commonly used in the sense of an extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged as distinguished from compensation for the loss suffered by the injured person.[4]

We conclude the above-quoted provision of the policies did not bar Nichols' claim for actual damages suffered from a breach of duty by the Casualty Company.

Moreover, 15 Okl.St.Ann. § 212 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, * * * or violation of law, whether wilful or negligent, are against the policy of the law."

The bad faith of the Casualty Company was not fraud in the sense of false representation. But bad faith has been held to be synonymous with fraud by the Supreme Court of Oklahoma.[5]

We are of the opinion that if the above-quoted provision of the policies should be construed as applicable to the claim asserted in the instant case, such provision would be contrary to the public policy of Oklahoma and, therefore, void.

Affirmed.

HUXMAN, Circuit Judge, concurs in the result.

---

[4] O'Sullivan v. Felix, 233 U.S. 318, 324, 34 S.Ct. 596, 58 L.Ed. 980; Restatement, Conflict of Laws, p. 730; Stevenson v. Stoufer, 237 Iowa 513, 21 N.W.2d 287, 283; Ryan v. Motor Credit Co., 130 N.J.Eq. 531, 23 A.2d 607, 613; Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706, 709; Roller v. Murray, 71 W. Va. 161, 76 S.E. 172, 174, L.R.A.1915F, 984, Ann.Cas.1914B, 1139; Great Western Machine Co. v. Smith, 87 Kan. 331, 124 P. 414, 415, 41 L.R.A.,N.S., 379, Ann. Cas.1913E, 243.

[5] Pabst Brewing Co. v. Nelson, 108 Okl. 286, 236 P. 873, 875. See, also, Commonwealth v. Smith, 242 Ky. 365, 46 S.W.2d 474, 478; Hilgenberg v. Northrup, 134 Ind. 92, 33 N.E. 786, 787.