CASE 78—INDICTMENT—JUNE 19.

## Shipp v. Commonwealth.

APPEAL FROM WOODFORD CIRCUIT COURT.

1. CRIMINAL LAW—FALSE ENTRIES ON BANK BOOKS—EVIDENCE.—On the trial of one charged in an indictment with making a false entry on the books of a bank of which he was an officer, with the intention of cheating and defrauding the bank, upon the issue as to his guilty intention in making the false entry, testimony as to other similar transactions was competent as tending to throw light upon the intentions of the accused in doing the act complained of.

2. EVIDENCE—RES GESTAE.—The evidence admitted as to such similar transactions was of the acts which may be supposed to have been done in furtherance of a general design of fraud upon the bank, and, therefore, forms a part of the *res gestae.*

3. INDICTMENT—AVERMENT AS TO WHEN CRIME COMMITTED.—Any allegation in an indictment as to the time at which a felony was committed is immaterial, provided it be alleged that it was committed before the finding of the indictment.

2. FRAUD—DEFINITION OF—An instruction which told the jury that if the defendant made the entry complained of "with the intention of circumventing, misleading, and deceiving the officers of the Deposit Bank of Midway, to his own advantage and benefit, said intention was fraudulent within the meaning of the law," was proper.

MORTON & DARNALL FOR APPELLANT.

1. The evidence as to the other false entries than the one expressed

Shipp v. Commonwealth.

in the indictment was not competent; the effect of its admission was to convict the defendant of one felony by proof of other felonies.   Martin v. Commonwealth, 93 Ky., 194; State v. Le-page, 57 N. H., 245, (24 Amer. Rept., 69.)

2. In any event it was certainly erroneous for the court not to explain to the jury in the instructions that such evidence was admitted only for the purpose of showing defendant's fraudulent intent.

3. The whole transaction shows that the appellant had no inten-tion of defrauding the bank, but on the contrary to benefit it by making a good showing in its report.   The transaction was ir-regular but irregularity is not a crime.   Under the statute the false entry which is criminal is limited to a false entry made with the intention of cheating or defrauding the bank itself, and it was not intended to create a public offense for the mak-ing of a false entry with the intention to deceive the officers of the bank.

C. J. BRONSTON AND W. S. TAYLOR FOR APPELLEE.

1. It was necessary for the commonwealth to show that the entry was made with fraudulent intent; and intent being a secret operation of the mind, it can only be ascertained by the acts and representations of the party, and therefore it is relevant for such purposes, under certain limitations, to prove either similar acts which explain the motive, or bring home to the party the knowledge sought to be proved.   Ky. Stat., sec. 1186; Steph-ens en Evidence. Art. 11; State v. Lepage, 57 N. H., 245; (24 Amer. Rept., 69); Wood v. U. S. 16 Peters, 342; Roscoe's Criminal Evidence, 86; 3 Russell on Crimes, 285-8; Bottomly v. U. S., 1 Story, 135; Cook v. Moore, 11 Bush., 213; Annapoles' Case, 24 Grat. 563; (12 Amer. Rept., 731); Moore v. U. S., 150 U. S., 57; Alexander v. U. S., 138, U. S., 353; Strong v. State, 44 Amer. Rept., 299; Harris' Criminal Law, sec. 369; Wharton Criminal Law, vol. 1, sec. 649; 1 Bishop's Crim. Procedure, 502, 1067; Wharton's Criminal Evidence, sec. 46; 44 Amer. Dec., 121; 23 Amer. Dec., 607.

2. All allegations in an indictment as to the time a crime was com-mitted, except that it was committed before the finding of the indictment, will be treated as surplusage, unless the time be a material ingredient of the offense.   Sec. 129, of the Crim-inal Code; 80 Ky., 140; 86 Ky., 1; 3 Met., 479; 89 Ky., 143; 15 Ky. Law Rept., 284; 5 Bush, 377; 16 B. M., 1; 81 Ky., 524; 14 Bush. 530; 92 Ky., 114; 80 Ky., 516; 92 Ky., 34.

3. The definition of fraud given by the court, as applied to the facts and circumstances of this case, is correct. Cooley on Torts, p. 474; Mitchell v. Kintzer, 5 Penn. St., 216; 47 Amer. Dec., 408; 2 Pomeroy's Eq. Jur., sec. 873; Amer. & Eng. Enc. of Law, vol. 8, p. 635.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

Appellant was convicted on an indictment charging him with making a false entry on December 31, 1894, in a book owned by, and in the custody and control of, the Deposit Bank of Midway, and kept by him as cashier, with the intention of cheating and defrauding the bank, the entry being a charge upon the bank ledger to the account of the Louisville Banking Co. of an item of $3,000 as the proceeds of a draft on the Commercial Building Trust, of Louisville, which entry and charge was false, and known to be so by Shipp, when in fact no such draft was drawn or collected, nor was the Commercial Building Trust at that time indebted to Shipp or to the Deposit Bank of Midway.

It appears from the evidence, and is conceded on behalf of appellant, that for a number of years his account in the Deposit Bank of Midway, of which he was cashier, was overdrawn, the overdraft increasing continuously to the close of his service. It also appears that, upon the occasions when a statement of the affairs of the bank was, under the statute, required to be made, his overdraft was apparently decreased by fictitious entries upon the books. The account of Stone, who was a clerk in the bank, was manipulated in the same manner. After the statement required by the statute had been made, the amounts by which the overdrafts had been diminished were charged back, so as to make the books exhibit truly the state of the account.

The entry upon which the indictment in this case is based was of a draft, dated December 29, 1894, drawn by appellant upon the Commercial Building Trust, of Louisville, for $3,000 in appellant's favor. On the blotter, the Louisville Banking Co. was charged with the proceeds of the draft, as if it had been sent to that company for collection; and in the account of that company on the ledger was an entry bearing date December 29, 1894, by which it was charged with that sum, and the individual account of appellant of date December 31, 1894, was credited with a like amount as the proceeds of the draft. It is conceded, and is manifest from the evidence, that the draft was fictitious; was never sent to the Louisville Banking Co. for collection, and never left the office of the Deposit Bank, but was placed upon file and preserved. Moreover, the Commercial Building Trust was not indebted to appellant in any such amount as the face of the draft. The effect of the credit on appellant's account was to reduce his overdraft, and also to reduce the total of the overdrafts shown by the bank books. Upon the hearing, evidence was introduced to show several similar fictitious entries, which, however, were subsequently corrected by crediting the amount of the fictitious entry to the concern against which it had been charged, and charging the same amount to appellant's account. The item charged in the indictment was not corrected until March, 1896, when he was notified that an expert accountant would examine the books of the bank.

It was necessary on behalf of the Commonwealth to show that the entry was made; that it was false, and that it was made with the intention of defrauding the bank. The first

two elements of guilt are conceded. For the purpose of showing appellant's guilty intent in making the false entry, the Commonwealth introduced testimony of other similar transactions, under which similar drafts had been charged to other institutions. This evidence was objected to upon the ground that each of these transactions, upon the theory of the Commonwealth, constituted a felony, and that it, therefore, resulted that the defendant charged with one felony was convicted by proof of other felonies.

Serious objection is made to the admission of testimony as to two other transactions. The Commonwealth was permitted to prove that, on June 30, 1892, appellant's account was credited with $3,700, proceeds of No. 18046, and on the same date credited with $4,500, proceeds of No. 18047; and thereupon showed from the discount book that note No. 18046 was a note of Campbell & Baer for $150, and that No. 18047 was a note of N. B. & J. C. Risk for $300. The Commonwealth was also permitted to prove (against objection) by the assistant secretary of State the official statements required by law to be made as to the condition of the bank, the court permitting that part alone of those statements to be read which showed the amount of over-drafts, secured and unsecured, at the various dates at which the apparent amount of the overdrafts had been diminished by the fictitious entries. It was contended for the Commonwealth that appellant made these entries with the intention of defrauding the bank; while appellant's contention was, that his purpose was not at all to defraud the bank, but rather to promote its welfare by making it appear to the public by the published reports that the bank's condition

was more favorable than it really was, he being a large stockholder and having been connected with it for many years.

It is objected that these transactions, especially the two last named, were so distinct and separate from the act charged as to render them irrelevant and incompetent upon the issue of intent, and that they were prejudicial to the appellant as tending to create a prejudice against him in the minds of the jury. It is admitted that certain of these transactions bear a resemblance to the one charged in the indictment, but it is very earnestly claimed that the fictitious credits given to appellant by the use of the numbers of other and smaller notes had no features in common with the transaction charged.

It is true that it is not permitted to the prosecution to attack the character of the prisoner unless he puts it in issue, nor " * * * prove against a defendant any crime not alleged, either as foundation for a separate punishment, or as aiding the proof that he is guilty of the one charged, even though he has put his character in issue. Still, the same evidence may be and often is probative of two or more crimes. * * * The intent, knowledge or motive under which the defendant did the act charged against him, not generally admitting of other than circumstantial evidence, may often be aided in the proofs by showing another crime, actual or attempted. * * * Not in all the cases, but in a large proportion of them, such evidence to the intent, knowledge or motive adds to the disclosure of the one criminal transaction, so that it is admissible equally also on the

ground of the *res gestae.*" (Bishop's New Crim. Proc., 1120-21 and 1126-27)

So it has been held that upon trials for passing forgeries or other similar transactions, and of charges of false pretenses, other like offenses may be proven. This exception to the general rule applies only to cases, as the one at bar, where guilty knowledge or guilty intent is an essential ingredient of the crime.

"Where the *scienter* or *quo animo* is requisite to and constitutes a necessary and essential part of the crime with which the person is charged, and proof of such guilty knowledge or malicious intention is indispensable to establish his guilt in regard to the transaction in question, testimony of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent is competent, notwithstanding they may constitute in law a distinct crime." (Wharton's Am. Crim. Law, 6th edition section 649.)

"In the proof of intention it is not always necessary that the evidence should apply directly to the particular act with the commission of which the party is charged, for the unlawful intent in the particular case may well be inferred from a similar intent proved to have existed in other transactions done before or after that time." (3 Greenl. on Ev., section 15.)

And it has been said that "when there is a question whether a person said or did something, the fact that he said or did something of the same sort on a different occasion may be proved, if it shows the existence on the occasion in question of any intention, knowledge, good or bad faith, malice or other state of mind or of any state of body or bodily

feeling, the existence of which is in issue or is deemed to be relevant to the issue." (Stephens' Dig. of Ev., May's edition page 56.)

"When there is a question whether an act was accidental or intentional, the fact that such act formed part of a series of similar occurrences, in each of which the person doing the act was concerned, is deemed to be relevant." (Ibid,. page 61). And in Strong v. The State, 86 Ind., 208 (44 Am. Rep., 298), the court. speaking of such offenses as conspiracy, uttering forged instruments and the like, said: "In these the act itself which is the subject of inquiry is almost always of an equivocal kind, and from which *malus animus* can not, as in crimes of violence, be presumed; and almost the only evidence which could be adduced to show the guilt of the prisoner would be his conduct on other occasions." From these authorities, and others of like import which might be cited if deemed necessary, it appears to us to be fairly inferrable that where the intent with which an alleged offense was committted is equivocal, and such intent becomes an issue at the trial, proof of the commission of other similar offenses, within certain reasonable limits, is admissible, as tending to throw light upon the intentions of the accused in doing the act complained of.

In Bottomly v. U. S., 1 Story, 135, it was said: "In all cases where the guilt of a party depends upon the intent, purpose or design with which an act is done, or upon his guilty knowledge, I understand it to be a general rule that collateral facts may be examined into in which he bore a part, for the purpose of establishing a guilty intent. In short, whenever the intent or guilty knowledge of a party

is a material ingredient in the issue of a case, their collateral parts, that is, other acts and declarations of a similar character tending to establish such intent or knowledge, are proper evidence. In many cases of fraud it would be otherwise impossible satisfactorily to establish the true nature and character of the act."

These authorities seem to us to apply directly to the facts in the case at bar. By the statute under consideration the purpose of defrauding the bank was an essential element of the crime. If not done with that intent the act was not criminal. The intent was, therefore, essential to be proved and found. As Lord Mansfield expresses the rule: "When an act, in itself indifferent, becomes crime, if done with a particular intent, then the intent must be proved and found; but when the act is in itself unlawful the proof of justification or excuse lies on the defendant; and in case of failure thereof the law implies a criminal intent."

In Jordan v. Osgood, 109 Mass., 457, (12 Am. Rep., 734) the court, while applying to the exception under discussion narrower limits than those usually applied, nevertheless distinctly embraced the evidence objected to: "We think the true rule to be deduced from them (the authorities) is that another act of fraud is admissible to prove the fraud charged only where there is evidence that the two are parts of one scheme or plan of fraud committed in pursuance of a common purpose." And in State v. Lapage, 57 N. H., 245 (24 Am. Rep., 82), in speaking of cases in which such testimony was admissible, the court said: "Another class of cases consist of those in which the evidence tends to show a general plan or conspiracy, one act of which was that

which was in issue. To this class belong Mason v. State, 42 Ala., 522, and perhaps Commonwealth v. Turner & Shearer, 3 Met., 19."

There was undoubtedly evidence for the consideration of the jury to show that each of the acts proven was, in common with the act charged, committed in furtherance of a common purpose to deceive the officers of the bank as to its condition, and to conceal from the bank and its officers the overdrafts of appellant. It would hardly be too much to say that this evidence tended to show the existence of a conspiracy for the purpose of concealing the overdrafts of both the appellant and Stone, the clerk. We think the testimony objected to was clearly within the exception to the rule, and its admission was not error.

A further objection is based upon the fact that the record does not show that the jury were instructed as to the purpose for which this testimony was introduced and to be considered by them, i. e., as tending to show the fraudulent purpose of appellant; and the case of Martin v. Commonwealth, 93 Ky., 194, is relied on in support of this objection. In that case, upon a trial for murder, it was held competent to show that the accused had been indicted for robbery at the instance of the deceased, for the purpose of showing a motive for the commission of the murder, but not to establish the offense of robbery by testimony of facts necessary to show guilt. In that case the entire record of the trial for robbery was permitted to be read to the jury, and defendant's guilt of robbery was shown in order to fix upon him the crime of murder, which was undoubtedly prejudicial to his substantial rights. Said the court:

"Such evidence goes to the jury as a matter of necessity, for the purpose alone of showing motive on the part of the accused to commit the crime, and no more than is necessary to show motive should be allowed, and then the jury told the purpose for which the evidence is to be considered by them."

There seems to us to be a distinction between the class of cases to which the Martin case belongs and cases like the one at bar. It was clearly not permissible to show the defendant's guilt in that case, because to do so would be to put him upon trial for two distinct and dissimilar offenses; and so, as testimony was admitted to show the charge of a distinct offense, in order to supply a motive for the crime, it was proper to tell the jury the purpose for which the testimony was admitted. In the case at bar, while it may have been proper to inform the jury when the testimony was admitted of the purpose of its admission, the evidence admitted was of acts which may well be supposed to have been done in furtherance of a general design of fraud upon the bank, and, therefore, formed a part of the *res gestae*. It is also objected that it was not sufficiently proven that the offense was committed on the 31st day of December, 1894; but upon this point we regard the law as well settled. The time of the commission of the act was in no sense a material ingredient of the offense. It is not a descriptive averment. At common law, while venue of time was an essential averment, proof of it was immaterial; and it seems to be well settled in Kentucky that any allegation in an indictment as to the time at which a felony was committed is immaterial, provided it be alleged that the offense

was committed before the finding of the indictment. (Faustre v. Commonwealth, 92 Ky., 34; Criminal Code, section 129.)

The remaining objection is made to the instructions given by the court. The first instruction is not objected to, except in so far as it failed to require proof that the entry was made on December 31, 1894. The second instruction was as follows: "And if the jury believe from the evidence, beyond a reasonable doubt, that the entry aforesaid was made by the defendant, Shipp, if he did do it, with the intention of circumventing, misleading and deceiving the officers of the Deposit Bank of Midway to his own advantage and benefit, such intention was fraudulent within the meaning of the law."

In lieu of that instruction, appellant asked the instruction that the intention to cheat or defraud the Deposit Bank, as used in the first instruction, meant the intention or purpose on the part of defendant to deprive the Deposit Bank of some of its funds or property, either by deception or artifice, and to appropriate the same to his own use. It was further asked by appellant that instruction No. 2 as given be modified by adding to it the following language: "But such advantage and benefit to him must have been to the disadvantage or detriment of the Deposit Bank of Midway." Undoubtedly a concealment by artifice of the fact of the existence of a large overdraft, which concealment enabled appellant to retain his position as cashier and to increase the amount of the overdraft, was in fact to the disadvantage and detriment of the bank. But we do not think it was necessary to embody this idea in the instruction.

(34)

Fraud has been defined by Story as "any cunning, deception or artifice to circumvent, cheat or deceive another." (1 Story's Eq., 3d edition, section 186). And this is substantially the definition adopted in Kerr on Fraud and Mistake, 42. It is contended on behalf of appellant that the court in its instruction confounded "cheating and defrauding the bank" with deceit practised upon the officers of the bank; and not only misconceived the import of the term "cheating" and "defrauding," but also confused the corporation with the officers of the corporation. But we think the distinction claimed to exist is more technical than real. The bank could not be deceived or defrauded except through its officers. It has been frequently stated that it was an impossibility to give a definition of fraud; but in our judgment the trial court correctly defined the term as applicable to the facts in evidence.

For the reasons stated the judgment is affirmed.