## Head v. Commonwealth.

(Decided June 10, 1915.)

## Appeal from Boyd Circuit Court.

1. Banks and Banking—Criminal Law—Indictment.—When an indictment against the cashier of a bank for making a false entry with the intention of cheating the bank contains the name of the party charged, the offense charged, the county in which it was committed, and a statement of the acts constituting the offense, in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended, and with such a degree of certainty as to enable the court to pronounce judgment, the indictment will be sufficient, although it may be phrased in inapt words, or the sentences be ungrammatically expressed, or the arrangement of the matter not orderly.

2. Criminal Law—Bill of Particulars.—When the indictment, although sufficient in form and substance so describes the transaction as that the court in the exercise of a sound discretion may think the accused should have more detailed information, he may direct a bill of particulars to be filed.

3. Banks and Banking—Criminal Law—Indictment Under Section 1186 of the Kentucky Statutes for Making False Entry.—Where the cashier of a bank was indicted under Section 1186, of the Kentucky Statutes for making a false entry, it was necessary that the Commonwealth should show that the entry was made, that it was false, and that it was made with the intention of cheating and defrauding the bank.

4. Banks and Banking—Criminal Law—Indictment for Making False Entry—Evidence of Other Fraudulent Transactions.—On the trial of a bank cashier for making a false entry on the books of the bank, it is competent, for the purpose of showing the intent with which the entry under investigation was made, to show other false entries and fraudulent transactions committed by the cashier in the conduct of the affairs of the bank.

J. I. BLANTON, E. M. DICKSON, G. B. MARTIN and E. B. HAGER for appellant.

JAMES GARNETT, Attorney General; M. M. LOGAN, Assistant Attorney General; H. R. DYSARD and J. B. WILHOIT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Under an indictment charging that as cashier of the Citizens Bank & Trust Co., of Ashland, he made false entries, with the intention of defrauding the bank, the appellant was found guilty by a jury and his punishment assessed at an indeterminate sentence of from two to ten years in the State penitentiary.

On this appeal from the judgment of conviction, it is first insisted that the indictment under which the trial was had was fatally defective, and, therefore, the court erred in not sustaining the general demurrer interposed.

The prosecution was instituted for a violation of section 1186 of the Kentucky Statutes, reading: "If any officer or employe of any joint stock company, bank or corporation shall, with the intention of cheating or defrauding the joint stock company, bank or corporation, or any person doing business with it, erase, mutilate or alter any book or paper or evidence of debt, or any part thereof, owned by or in custody or under the control of the joint stock company, bank or corporation, or shall destroy the same, or shall make any false entry, or omit to make an entry in any such book or paper, he shall be confined in the penitentiary not less than two nor more than ten years."

The indictment charged J. S. Head, Jr., with "the crime of unlawfully and feloniously and with the intention of cheating and defrauding the Citizens Bank and Trust Company of Ashland, Boyd County, Kentucky, a corporation under the laws of the State of Kentucky, engaged in the banking business, by making a false entry upon the general blotter and book of said bank, he at the time being an officer, servant of the bank, to-wit, cashier of said bank, committed in manner and form as follows:

"The said defendant, J. S. Head, Jr., on the 29th day of August, 1911, in the county and circuit aforesaid, did unlawfully and feloniously and fraudulently, he at the time being an officer and servant and cashier of the said The Citizens Bank and Trust Company, a banking corporation, created by the laws of the State of Kentucky, and carrying on a general banking business in the city of Ashland, Boyd County, Kentucky, and which bank had entrusted to said J. S. Head, Jr., the duties of cashier of said bank at the time, and he being cashier of said bank, and in its employment as above set out, and while so acting as such officer, employe, servant and cashier of said bank, and with the intention of cheating or defrauding said bank, did enter upon the general blotter and book of said bank the following false entry, to-wit: Under the general title of Bills Receivable on said general blotter and book of said bank, the letters and fig-

ures 'R. K. Lbr. Co., $3,500.00,' which was and is the abbreviation for the Reese Kitchen Lumber Co., said words being abbreviated rather than written out in full upon the said general blotter and book of said bank, the said J. S. Head, Jr., having applied said $3,500.00 to his personal use, and said entry having been made to cover up the appropriation of said $3,500.00 by the said J. S. Head, Jr., and with the intent to commit a fraud upon said bank, and to appropriate to his own use the sum of $3,500.00, and with the intent to wholly deprive said bank of the possession of said money, that said entry upon said general blotter and book of said bank is wholly false and was known to be by said defendant, J. S. Head, Jr., at the time it was made by him, all of which was in violation of the Statutes in such cases made and provided, and against the peace and dignity of the Commonwealth of Kentucky.''

The criticism of this indictment is that it charges the accused only with the intention of cheating and defrauding the bank and not with the offense of making the false entry set out in the descriptive part of the indictment. The further criticism is made that it does not sufficiently point out, in compliance with section 124 of the Criminal Code, the offense charged or the circumstances necessary to constitute it. Other verbal criticisms are made, but we do not think there is any substantial merit in the objections urged to the sufficiency of the indictment. The indictment might have been more aptly drawn and have described with more elaboration the particular offense charged, but, upon the whole, it set out, as required by section 124 of the Criminal Code, the party charged, the offense charged, the county in which the offense was committed, and the particular circumstances of the offense, with sufficient clearness and certainty to enable the accused to understand the nature of the accusation against him.

The day has long since passed in which mere technical or unsubstantial errors or omissions in an indictment will constitute reversible error. The sections of the Criminal Code of Practice relating to indictments, and the reasonable construction that has been given to these sections by this court, have removed from the category of available error many grounds that formerly could have been successfully relied on. In statutory offenses like this, when the statute under which the pros-

ecution is instituted describes the offense, and the indictment so substantially follows the statute as that the accused cannot read it without knowing the charge he will be called on to defend, there is little reason for holding that it is insufficient.

This court, in Overstreet v. Com., 147 Ky., 471, said:

"The essential things are that the indictment shall contain (a) the name of the party charged; (b) the offense charged; (c) the county in which it was committed; (d) and a statement of the acts constituting the offense, in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended, and with such degree of certainty as to enable the court to pronounce judgment on conviction according to the rights of the case. It is apparent that when an indictment furnishes this information, the accused cannot be misled or deceived by it or fail to know what offense he is charged with, nor will the court be in doubt when it comes to pronounce judgment. An indictment may contain more than is necessary, or it may be phrased in inapt words, or the sentences may be ungrammatically or awkwardly expressed, or the spelling not conform to approved standards, but if, when considered as a whole, the charge is stated with sufficient clearness and certainty to enable a person of common understanding to know what he is charged with, and to enable the court to pronounce judgment, no error in form of expression will make the indictment bad. Nor will any difference between the accusative part of the indictment and the body or descriptive part of it, that is not so substantial as to be misleading, be fatal to the sufficiency of the pleading. In other words, in considering the sufficiency of an indictment, it will be read and considered as a whole, and if when so read and considered it substantially conforms to the requirements of the Code in respect to the matters therein pointed out as material and necessary, it will be a good indictment. We do not mean to say that an indictment that departs from the substantial rules of code pleading or that fails in some material respect to conform to common law or statutory requirements should be treated as a good pleading. What we do mean to say is that it is only the substantial material things that are necessary, and that the failure to observe formal or immaterial things will not be regarded as fatal to the indictment." And this rule

of construction and practice has been adopted and approved in May v. Com., 153 Ky., 141; Rutland v. Com., 160 Ky., 77; and Drury v. Com., 162 Ky., 123.

Testing now the sufficiency of the indictment by the wording of the statute under which it was found, as well as by the requirements of the Code, we do not find it lacking in any essential matter necessary to constitute a good indictment. Having reference to the matter in hand, the offense is committed when an officer or employe of the bank makes any false entry with the intention of cheating or defrauding the bank, and the indictment charged, in substance and effect, that Head, as cashier of the bank, did with this intent make the false entry described in the body of the indictment.

It may be admitted that the indictment is not accurately phrased and that the arrangement of the matter is not orderly, but these are faults that do not affect the substance of the accusation and could not have misled or deceived the defendant as to the nature of the charge against him. The indictment charged only one offense, and that was the making of the false entry with a fraudulent intent.

It appears, however, that the defendant desired more complete information concerning the crime of which he was accused than the indictment furnished, and the court required the Commonwealth to file a bill of particulars in which it was set out "that J. S. Head, Jr., on August 3, 1911, drew his personal check on the Southern National Bank of Louisville, Kentucky, for $3,500.00, and credited his own account at the Citizens Bank and Trust Co., at Ashland, Ky., with said $3,500.00, and sent the same to the said Southern National Bank of Louisville, Kentucky, for credit to the account of the said Citizens Bank and Trust Co., when at the time he, J. S. Head, Jr., had no funds in the Southern National Bank of Louisville, Kentucky. Said check was directed not to be protested, and on August 4, 1911, payment on said check was refused by the Southern National Bank of Louisville, Kentucky, and charged back to the Citizens Bank and Trust Company, of Ashland, Kentucky, and to offset this charge and to make the books of the Citizens Bank and Trust Company correspond with the books of the Southern National Bank of Louisville, Kentucky, the defendant made, under the head of Bills Receivable, the false entry, 'R. K. Lbr. Co., $3,500.00,' on

August 29, 1911, as though said company had on said date executed and delivered a note for $3,500.00 to the said Citizens Bank and Trust Company, as an asset of said bank, and as though the said bank had on August 29, 1911, discounted a note for the said R. K. Lbr. Co. for $3,500.00, the proceeds of which in the sum of $3,500.00 was credited to the Southern National Bank of Louisville, Ky., and charged to the Bills Receivable account of the Citizens Bank and Trust Company on said August 29, 1911, the said sum of $3,500.00, when in truth and in fact there was no such note for $3,500.00 as an asset or property of said Citizens Bank and Trust Co. at that time, and the said $3,500.00 was appropriated to the use and benefit of J. S. Head, Jr., on said August third, as hereinabove set out. These particular facts and others connected therewith are the ones relied on by the Commonwealth for a conviction herein.''

Looking now to the evidence for the Commonwealth, it may be said at the very outset to fully support the charge made in the indictment. It shows that on August 3, 1911, the personal account of Head was overdrawn in the bank in a large sum. That on this date he drew his personal check on the Southern National Bank of Louisville for $3,500.00; made out a deposit ticket for this amount and credited his personal account with $3,500.00, thus making, so far as he could do so, the Southern National Bank the debtor of the Citizens Bank and Trust Co. in the sum of $3,500.00. It further shows that on the same day he sent to the Southern National Bank, which was the correspondent bank of the Citizens Bank and Trust Co., the check for $3,500.00 that he had drawn on it, and also some other small checks. That he indorsed his check for $3,500.00 ''no protest,'' which was a direction to the Southern National Bank not to protest the check if it was not honored. That these checks were received on the fourth day of August by the Southern National Bank, and it gave the Citizens Bank and Trust Company credit for all of the checks except the one for $3,500.00, which it refused to pay.

That on August 29th the books of the Citizens Bank and Trust Company showed that there was discounted by the bank a note for $3,500, apparently executed on that date by the Reese Kitchen Lumber Company to the bank, and the proceeds of this fictitious note, to-wit, $3,500.00, were thereupon credited by Head to the ac-

count of the Southern National Bank, which had been charged with the $3,500.00 check. The purpose of this fraudulent scheme was to balance the account of the Southern National Bank with the Citizens Bank and Trust Company, and it is perfectly apparent that at this time Head knew that the Southern National Bank had refused to honor the check for $3,500 that he had drawn on it, as, of course, if this check had been honored by the Southern National Bank there would have been no reason for off-setting against the amount of this check the proceeds of the fictitious note of the Reese Kitchen Lumber Company.

The alleged note of the Reese Kitchen Lumber Company was entered upon the books of the bank under the style of "R. K. Lbr. Co," which was an abbreviation of the name "Reese Kitchen Lumber Co.," and it is conclusively shown that this company did not, on August 29, or at any other time, execute to or discount at the Citizens Bank and Trust Company a note for $3,500, nor did it on or about that date execute to or discount any note with this bank, nor was there found among the papers of the bank or entered on other appropriate books of the bank any note due by the Reese Kitchen Lumber Company. So that the entry made by Head on the books of the bank, that the Reese Kitchen Lumber Company had discounted a note for $3,500.00 and received credit for this amount, and the entry on the books of the bank that this sum had been credited to the account of the Southern National Bank for the purpose of balancing its account, were each wholly false and fraudulent. The evidence further shows that as the result of this fraudulent scheme, Head was enabled to obtain from the Citizens National Bank $3,500 to which he was not entitled and no part of which has ever been repaid.

Head attempts to explain this transaction by saying that he had made some arrangement with the president of the Southern National Bank previous to August third to honor his check for $3,500.00, and he did not know it had not been honored at the time the Reese Kitchen Lumber Company entry was made. He further says that, by inadvertence or mistake on his part in making the entry, he wrote the words "Reese Kitchen Lumber Co.," or "R. K. Lbr. Co.," when he should have written the words "Macklin Kilburn Co.," as this company at this time owed the Citizens Bank and Trust Co. $3,500.00.

Without going into the details of this explanation, we think it sufficient to say that it was, in truth and in fact, no explanation at all, and that the decided weight of the evidence demonstrates that the entry showing that the Reese Kitchen Lumber Company had discounted a note for $3,500.00, the proceeds of which was credited to the account of the Southern National Bank, was fraudulent and made with the intent to cheat and defraud the Citizens Bank and Trust Company out of $3,500.00.

During the introduction of the evidence for the Commonwealth, expert witnesses who had examined the books of the bank, and who were qualified to give testimony concerning their condition, were permitted to testify that the books showed that previous to this Reese Kitchen Lumber Company transaction, as well as between the date of that transaction and the closing of the bank, Head had made other false entries in the books and had been guilty of other wrongful and fraudulent practices in connection with the affairs of the bank, and it is now contended that this evidence of other fraudulent acts and transactions was incompetent and prejudicial.

As illustrating the nature of this evidence, to the introduction of which proper objection was made, it was shown that on June 8th, 1911, the account of Head in the bank was fraudulently credited by $3,000.00. That another false entry was made on August 5, 1911, in connection with a note of the Ashland Leather Company by which Head profited to the extent of $5,000.00. That on July 14, 1913, a false entry was made on the books of the bank in which the names of Albert S. Rice and the Elkhorn Fuel Company were used, by which Head benefited to the extent of several thousand dollars. There was further evidence given by these witnesses to the effect that Head's account was frequently overdrawn, and evidence tending to show other fraudulent transactions in connection with his conduct of the affairs of the bank; but the trial court, upon the introduction of this evidence, admonished the jury that they should consider the evidence of entries and acts and transaction of the defendant other than the one mentioned and described in the indictment, only for the purpose of showing the intent or purpose of the defendant in making the entry in question, if he did make it, and for no other purpose.

The jury were also instructed in writing and in connection with the other instructions, that "They should

take and consider the evidence as to any entries made by the defendant on the books of the bank in question, other than the one mentioned in instruction number one, and also the evidence as to the condition of the bank and the defendant's personal account with it and his letter of August 2, 1911, for the purpose only of showing the intent or purpose or motive of defendant in making the entry in question, if he did make same, and the jury are instructed not to consider such testimony for any other purpose."

The statute under which this prosecution was had provides, as we have seen, that the offense is committed by the making of a false entry with the intention of cheating and defrauding the bank, and it is well settled by the authorities that on the trial of an indictment for making a false entry or entries with a fraudulent purpose, it is competent for the Commonwealth to introduce evidence showing or conducing to show that the defendant in his capacity of an officer of the bank, made or procured others to make, at other times and with reference to other transactions than the one under investigation, false or deceptive entries, and also to show by other specific acts his course of conduct or dealing with the bank, or his fraudulent management of its affairs, for the purpose of showing the intent with which he made or procured to be made the false entry under investigation.

In order to secure a conviction under the statute applicable to this case, it is necessary that the Commonwealth should show: (a) that the entry was made; (b) that it was false; (c) that it was made with the intention of cheating and defrauding the bank. In this case the evidence is undisputed that the entry was made and that it was false, but it was also essential that it should have been made with a fraudulent intent, and this last ingredient of the offense is the only one the defendant pretended to put in issue. He claimed, as has been stated, that this false entry was a mistake and endeavored to defeat the prosecution upon this theory.

Of course, if this entry was inadvertently, or carelessly or honestly made, without any intention to cheat or defraud, the fact that it was false would not be sufficient to make out a case for the Commonwealth. It therefore became important to show the intention in the mind of the defendant in making this entry and the purpose for which it was made; and in developing the facts

and circumstances that tended to show whether it was mistakenly or honestly or fraudulently made, it was both relevant and important that the Commonwealth should, be permitted to show as it did the general course of the, defendant's dealing with the bank.    To illustrate—the cashier of a bank whose course of conduct in the affairs of the bank had been honest and straightforward, might easily establish his innocence of any wrongful intent in the making of a single false entry; while, on the other hand, if his course of dealing with the bank had been marked by many examples of deceptive and false entries, from the making of which he had derived benefit or advantage, it would strongly tend to show that the entry under investigation was made with a like purpose.    And so, if, in other matters connected with the affairs of the bank, the conduct of the cashier had been open and free from dishonesty and fraud, it would strongly conduce to sustain his assertion that he was free from any wrongful intent in making the false entry that was the subject of the inquiry.    But, on the other hand, if the records of the bank showed that his account was often overdrawn, and for the purpose of hiding these overdrafts he resorted to fraudulent methods, or if the records of the bank showed that in other ways and by other means he had endeavored to conceal the true state of its affairs, and had taken advantage of his position to secure improper benefit or advantage, all these circumstances would furnish persuasive evidence that the act under investigation was committed with a fraudulent purpose.

The cashier of a bank has access to and, in a large measure, control of all its books, records and papers, and when it is discovered that a false entry has been made or some other fraudulent transaction to which the cashier was a party has been discovered, it is allowable and competent to open up his general course of dealing with the bank for the purpose of showing every false and fraudulent entry on its books or records and every illegal transaction in connection with its affairs to which he was a party for the purpose of elucidating the motive that prompted the doing of the things that constitute the charge for which he is being tried.

In the case of Shipp v. Com., 101 Ky., 518, the extent to which evidence of other wrongful and fraudulent transactions is relevant and competent, was thoroughly

investigated, and it was there held that it was permissible, on the trial of the cashier for making a false entry in the books of the bank, to show various other deceptive and fraudulent transactions of the cashier in connection with the affairs of the bank, although they were separate and distinct from the charge under investigation and threw only collateral light on the intent with which the act was committed.

The rule laid down in that case in support of the admissibility of evidence of other acts is, we think, controlling in this case, and although it appears that the evidence of wrongful acts on the part of the accused in his course of dealing with the bank was permitted to take a wider range in this case than in that, the purpose of it all was to show that the entry under investigation was not made through mistake or ignorance or inadvertence, but was a part of a plan and scheme to which the accused had frequently resorted in his course of dealing with the bank for the purpose of concealing unlawful and wrongful acts, out of which he derived or expected to derive profit or advantage, to the injury of the bank.

We are, therefore, of the opinion that all of the evidence admitted was competent for the purpose of illustrating the intent of the accused in making the false entry charged in the indictment.

The instructions are also complained of, but they are not open to any well-founded criticism.

Upon the whole case, we think the defendant had a fair trial and that the verdict was fully justified by the evidence. Wherefore, the judgment appealed from is affirmed.