# Commonwealth et al. v. Smith, Judge, et al.

(Decided February 9, 1932.)

BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, Assistant Attorney General, for petitioners.

IRA D. SMITH, and C. C. MOLLOY for respondents.

OPINION BY JUDGE RICHARDSON—Granting writ of prohibition.

J. W. Tracy, was tried and convicted in the Jefferson circuit court, Jefferson county, Ky., on indictment No. 46272 on the 12th day of May, 1922, on the charge of housebreaking, found guilty, and his punishment fixed at five years in the penitentiary. On the 27th day of May, 1922, he was tried on indictment No. 46106, charged with the crime of having and keeping burglar tools, found guilty, and his punishment fixed at ten years in the penitentiary. On the 14th day of June, 1922, he was tried and convicted on indictment No. 45971, for the crime of robbery, and his punishment fixed at ten years in the penitentiary. Immediately below the entry of the verdict of the jury on the order book in each prosecution, the clerk made this entry: "It is therefore considered and adjudged by the court that defendant is guilty as charged in the indictment and his punishment fixed at confinement in the penitentiary for the term of (time fixed in the verdict) years."

The orders of the day on which these orders were respectively entered, were signed by the judge of the court on May 26 and 27, 1922. On the 26th day of May Tracy entered a motion in arrest of the judgment in prosecution No. 46273, which was overruled June 3, 1922. On that day he filed therein motion and grounds for a new trial. On May 29, 1922, in prosecution No. 46106, he entered a motion for a new trial which was overruled on the 19th day of September, 1922. On the 14th day of December, 1922, in prosecutions No. 45971, No. 46106, and No. 46273, by counsel, Tracy requested ten days' additional time in which to file a bill of exceptions in each of the prosecutions. On the 26th day of December, 1922, by an agreement between the commonwealth's attorney and the attorney of Tracy, time was extended to January 15, 1923, in which to prepare and tender a bill of exceptions. On January 2, 1923, Tracy was brought into open court, and the following orders were entered in each of the three prosecutions:

"At a court held on the 2nd day of January, 1923, the defendant was this day brought into court and being informed of the nature of the indictment, plea and verdict, was asked if he had any legal cause to show why judgment should not be pro-

nounced against him, and none being shown it is adjudged that the defendant be taken to the county jail and from there to the State Penitentiary and there confined at hard labor for a period of ten years.

"No. 45971.     A. T. Burgevin, Judge."

"At a court held on the 2nd day of January, 1923, the defendant was this day brought into court, and being informed of the nature of the indictment, plea and verdict, was asked if he had any legal cause to show why judgment should not be pronounced against him, and none being shown it is adjudged that the defendant be taken to the county jail and from there to the State Penitentiary and there confined at hard labor for a period of ten years.

"Punishment in this case to begin after termination of it in case No. 45971.

"No. 46106.     A. T. Burgevin, Judge."

"At a court held on the 2nd day of January, 1923, the defendant was this day brought into court, and being informed of the nature of the indictment, plea and verdict, was asked if he had any legal cause to show why judgment should not be pronounced against him, and none being shown it is adjudged that the defendant be taken to the county jail and from there to the State Penitentiary and there confined at hard labor for the period of five years.

"Imprisonment hereunder to begin after conclusion of imprisonment on other charges under No. 46106.

"No. 46273.     A. T. Burgevin, Judge."

In obedience to these judgments sentencing Tracy to the penitentiary, he was transported to and confined in the reformatory at Frankfort, Ky., on January 5, 1923. On the 2nd day of February, 1923, he was removed from the reformatory to the penitentiary at Eddyville, Ky. The clerk of the Jefferson circuit court transmitted to the warden at Frankfort, at the time of the first confinement of Tracy, copies of the orders showing the three periods of confinement fixed by the jury without copying the last sentences in the above orders in cases No. 45971 and No. 46106. Instead of copying the last sentence in each, the word "nonconcurrent" was written at the foot.

After confinement in the penitentiary from January 5, 1923, to August 30, 1930, Tracy filed before Hon. Ira D. Smith, judge of the Lyon circuit court, as authorized by section 399, Criminal Code of Practice, a petition for a writ of habeas corpus, setting forth his commitment, his good behavior during confinement, the credit therefor on his punishment to which he was entitled under the rules and regulations of the board of charities and corrections and the Statutes of Kentucky, and alleged his confinement in the penitentiary was unlawful.

On August 8, 1930, twenty-two days before Tracy filed his petition for writ of habeas corpus, an attorney of the Louisville Bar, in person, furnished a lady deputy clerk of the Jefferson circuit court a statement containing the "page numbers, case numbers and order book numbers," of the record pertaining to J. W. Tracy's convictions in these prosecutions, and also requested her to copy three certain orders of the court and to attach to the copies a form of certificate, required by the acts of Congress.

She prepared the copies of the particular orders and attached the form of certificate requested. These copies were attached to and made a part of Tracy's petition for a writ of habeas corpus. They were the orders showing the completion of the work of the jury and the return of its verdict followed by the clerk's entry which we have hereinbefore set out.

On the petition for a writ of habeas corpus and these copies, Judge Smith granted the order discharging Tracy from the penitentiary and releasing him of further punishment under the judgments of conviction of the Jefferson circuit court.

On September 20, 1930, the Attorney General entered a motion to set aside and vacate Judge Smith's order. Thereafter Tracy was rearrested under the orders of the Jefferson circuit court in the three prosecutions. On the 11th day of December, 1931, Tracy filed a second petition for a writ of habeas corpus. The warden of the Eddyville penitentiary filed a response. By agreement, the motion of the Attorney General to vacate the order of discharge and the second petition for a writ of habeas corpus, were tried and heard together. At the conclusion of the hearing Judge Smith indicated his purpose to sustain Tracy's motion, and again to order his discharge. Upon his so doing, the warden filed

in this court his petition for a writ of prohibition against Judge Smith to prevent him from discharging Tracy, which is now presented to us for determination.

Section 110 of our Constitution has vested in this court "power to issue such writs as may be necessary to give it a general control of inferior jurisdictions."

In Com. ex rel. v. Minor, Judge, 195 Ky. 103, 241 S. W. 856, we stated the rule applicable in the present case and it is unnecessary to repeat here the reasons for the jurisdiction of this court in such cases.

The decisive question to be considered and determined is presented by the motion of the Attorney General to vacate the order dated September 2, 1930, discharging Tracy, and also by the response of the warden whereby the same question is again raised, namely: Was the order discharging Tracy procured by fraud?

The records of the Jefferson circuit court are presented, showing the verdict of the jury, the clerk's entry following it, the motion in arrest of judgment, the motion and grounds for a new trial, the orders relating to the filing of the bill of exceptions, and the orders required by sections 286 and 288 of the Criminal Code of Practice, sentencing Tracy to the penitentiary and providing that the punishment in one prosecution shall commence after its termination in the others, including the copies of the orders of the court delivered to the warden of the reformatory at the time of the first confinement of Tracy in accordance to the judgments. Also the affidavits and oral evidence received and considered by Judge Smith on the hearing of the second petition of Tracy are before us. There are many things susceptible of suspicion cropping out of Tracy's preparation for his application in August, 1930, for the writ of habeas corpus. It is very plain that the mind that conceived, directed and planned the procedure by which Tracy was released under the order of Judge Smith on the 2nd day of September, 1930, at the time the statement was delivered to the deputy clerk showing "the page numbers, case numbers and order book number," knew what it wanted; knew how to get what it wanted; and knew what to do with it when it was obtained.

The furnishing to the deputy clerk the statement of the "page numbers, case numbers and book numbers," containing the record of the court within itself, strongly

indicates to the average mind, not only that the attorney had previously examined the order books and thereby obtained knowledge of the record of the proceedings and orders of court in the three prosecutions, but that he knew which of them suited his purpose and was cautious and, in advance of the obtention of the copies of the orders, had prepared himself in order to prevent the deputy clerk to whom the statement was delivered, copying the orders of January 2, 1923, which show the true state of the record sentencing Tracy, and which would have prevented him accomplishing Tracy's discharge. He knew that without his statement to her, the proper orders might be correctly copied by her which would defeat the designed scheme to obtain Tracy's discharge without the presence of the correct orders showing that his punishment in one case was not to commence until after its termination in the others.

The very method utilized by the attorney to obtain copies of the orders requested, and which were made a part of the petition for the writ, connotes it was deliberately resorted to to, to mislead the deputy whom he approached to furnish them, and with foreknowledge on his part of the existence of the January orders. The orders he directed to be copied do not purport to be, and were not intended to be, and were not, the orders by virtue of which Tracy was sentenced to the penitentiary.

They make no pretense towards a compliance with section 286 and 288, supra. This fact is apparent to any attorney possessing a slight familiarity with the criminal practice or these code provisions. The record shows that after they were entered in May and June, 1922, and before the 2nd day of January, 1923, the date on which Tracy was sentenced to the penitentiary in the three prosecutions, other orders were entered relating to Tracy's motion and ground for a new trial, his motion in arrest of judgment, and the filing of the bill of execeptions in the three cases. Thus it appears that neither Tracy nor his attorney who presented his defense, nor the court or the commonwealth's attorney, at any time recognized or regarded the orders entered in May and June, 1922, as the final orders sentencing Tracy to the penitentiary. The steps which the record shows were taken, and the procedure had, show that the parties concerned in the prosecutions, as well as the court, did not so regard nor treat the orders, copies of which were secured

by the attorney as orders sentencing him. They were for the first time so regarded by Tracy's attorney when he ordered them copied.

The copies thereof, as well as any other copies of orders of the Jefferson circuit court, were admissible as evidence in all courts of the commonwealth, when attested or certified by the clerk (section 1627, Ky. Statutes), yet the attorney directed and secured the copies to be certified under the act of Congress. It is evident that it was his purpose to prepare himself in advance to have no reason for anyone to question them and to ward off the danger of delay and to make it assured that they would be accepted forthwith when presented with the petition for the writ.

In the record now presented, and which was presented at the hearing of the second petition of Tracy for the writ, there is no confusion or duplicaton of orders sentencing Tracy. There was but one order in each prosecution which purports to conform to sections 286 and 288, supra. To construe the orders entered in 1922 as intended for that purpose is equivalent to a criticism of the experience of the presiding judge of the criminal division of the Jefferson circuit court. There is no justification for such a construction of the orders of the court. The presentation of the copies of the orders which were a part of the first petition of Tracy for a writ of habeas corpus was the sequence of premeditated and well-planned chicanery to secure Tracy's discharge from punishment imposed by the judgments of the court.

A false impression may consist in a concealment of what is true as well as the assertion of what is false. The so causing a false impression constitutes fraud. The presentation to Judge Smith of the copies of the 1922 orders, and withholding from him information as to the existence of the orders of 1923, was a fraud upon the court. The presentation to him as the correct orders sentencing Tracy to punishment, of the copies presented with the petition for the writ, and at the same time keeping from him knowledge of the entry of the motion and grounds for a new trial, motor in arrest of judgment, the orders relating to the bill of exceptions, and the formal orders actually sentencing Tracy, by an attorney who was admittedly well enough acquainted with the state of the record of the orders to be able to point out to the deputy in the office "the page numbers, case numbers

and book numbers" of the record in the prosecutions on which the orders were entered, were a false presentation of the record. The suppression or intentional withholding of a portion of the record from Judge Smith was as vicious and disastrous as a false representation. The motive was the same in either case, and the result should be the same, since it was the intention that constitutes the fraud. Dennis v. Thomson, 240 Ky. 727, 43 S. W. (2d) 18.

Fraud vitiates whatever it touches.

"It is a generic term which embraces all the multifarious means which human ingenuity can devise and are resorted to by one individual to get an advantage over another. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling and unfair ways by which another is cheated."

Armstrong v. Wasson, 93 Okl. 262, 220 P. 643, quoted in Bloch v. Morgan, 116 Okl. 199, 244 P. 176, 178; Toone v. Walker, 115 Okl. 289, 243 P. 147. "Actual fraud" may be discovered as follows, "when the party intentionally, or by design, misrepresents a material fact, or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him; in every such case there is positive fraud, in the truest sense of the terms." Willink v. Vanderveer, 1 Barb. (N. Y.) 599, 607.

"The principal difference between 'actual' and constructive' fraud is that in the first case there is an intent to induce another to part with property or surrender some legal right, while in the other, although the act may accomplish that purpose, there is no such intent on the part of the actor."

The presence or absence of such intent distinguishes "actual" from "constructive" or "legal" fraud. Spallholz v. Sheldon, 158 App. Div. 367, 143 N. Y. S. 417; Harrison v. Roark et ux., 31 Ariz. 73, 250 P. 367, 369; Moore et al. v. Gregory, 146 Va. 504, 131 S. E. 692; Parker v. Solis (Tex. Civ. App.), 277 S. W. 714; Adkins v. Com., 232 Ky. 312, 23 S. W. (2d) 277; Shipp v. Com., 101 Ky. 518, 41 S. W. 856, 19 Ky. Law Rep. 634; Louisville & N. R. Co. v. Bryant, 149 Ky. 359, 149 S. W. 830;

Neal v. Scruggs, 95 U. S. 704, 24 L. Ed. 586; Strang v. Bradner, 114 U. S. 555, 5 S. Ct. 1038, 29 L. Ed. 248; Forsyth v. Vehmeyer, 177 U. S. 177, 20 S. Ct. 623, 44 L. Ed. 723; Bullis v. O'Beirne, 195 U. S. 606, 25 S. Ct. 118 49 L. Ed. 340; B. F. Johnson Pub. Co. v. Com. (Ky.), 97 S. W. 749; Fort Jefferson Imp. Co. v. Green, 112 Ky. 85, 65 S. W. 161, 162, 23 Ky. Law Rep. 1342. Fraud is synonymous with bad faith, dishonesty, or overreaching, and is distinguishable from mistake or negligence. Adams v. Barber, 157 Mo. App. 370, 139 S. W. 489; Farwell v. Metcalf, 61 Ill. 372.

With these principles in mind, it is not unfair to say the many things which throw suspicion around the preparation and presentation in 1930 of Tracy's application are sufficiently potent to convince the mind that a fraudulent scheme was originated and executed by Tracy's attorney to defeat the judgments of the Jefferson circuit court by or through the instrumentality of a writ of habeas corpus.

A client is bound by the fraudulent or negligent acts, conduct, or omission of his attorney. Dewberry v. Com., 241 Ky. 726, 44 S. W. (2d) 1076.

In Fort Jefferson Improvement Co. v. Green, supra, the controlling rule applicable to the showing herein was stated thus:

"When a judgment or decree of any court, whether inferior or superior, has been obtained by fraud, the fraud is regarded as perpetrated upon the court as well as upon the injured party. The judgment is a mere nullity, and it may be attacked and defeated, on account of the fraud, in any collateral proceeding."

Therefore the temporary writ of prohibition is made permanent, and the defendant will sustain the motion of the Attorney General to vacate the order of 2nd day of September, 1930 directing the release of Tracy from the penitentiary, and he is enjoined from issuing the writ on the application filed on the 11th day of December, 1931, or in any wise interfering with the custody of Tracy through proceedings under such writ.

Whole court sitting, with the exception of Chief Justice Dietzman, who took no part in the decision of this case.