**BUNGE CORPORATION, a corporation, Appellant,**

v.

**H. A. RECKER, Appellee.**

**Nos. 75–1062, 75–1097.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1975.

Decided July 11, 1975.

Mary McGuire Voog, New York City, for Bunge Corp.

Dwight Crader, Sikeston, Mo., for H. A. Recker.

Rush H. Limbaugh, Jr., Cape Girardeau, Mo., rebuttal for Bunge Corp.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and KILKENNY,* Senior Circuit Judge.

KILKENNY, Circuit Judge.

In August, 1972, appellant, a grain dealer, and appellee, a farmer, entered

---

* The Honorable John F. Kilkenny, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation.

into a written contract under which appellee agreed to sell to appellant ten thousand bushels of No. 2 yellow soybeans at $3.35 per bushel. Delivery of the grain was to be made at appellant's place of business, Price's Landing, Missouri, during January, 1973. Nothing in the contract required appellee to grow the beans on his own land, and, for that matter, he was not obligated to grow the beans himself or even to operate a farm. The contract also provided that the time of delivery could be extended by appellant.

The contract in question was one of a series between appellant and appellee under which beans were to be delivered. Approximately 12,000 bushels were delivered by appellee during the months of November and December, 1972, and January, 1973. About 4,700 bushels of the beans delivered in January were sold at a price in excess of the subject contract price. There was no delivery of beans under the subject contract. Severe winter weather struck the southeastern Missouri area in the early part of January, making it impossible for appellee to harvest approximately 865 acres of his beans.

Agents of appellant visited appellee's farm in mid-January and observed that the beans were unharvestable. Shortly thereafter, appellant directed a letter to appellee calling attention to the fact that the 10,000 bushels of beans due under the contract had not been delivered. By the same communication, appellant extended the time for delivery to March 31, 1973. From January 31st to April 2nd (the first market day after March 31st, a Saturday), the market price of beans rose from $4.98 to $5.50 per bushel.

When delivery was not made by April 2nd, appellant commenced this action to recover the difference between the contract price and the market price of the beans as of April 2, 1973. Appellee answered by admitting the failure to deliver but excusing himself from performance by reason of an act of God in the destruction of part of his crop.

After trial without a jury, the district judge [1] concluded that the act of God defense did not apply since the goods were not identified in the contract as those which were later destroyed in the field.[2] He concluded that appellee was liable for breach of contract, but that the measure of damages should be determined by the difference between the contract price and the market price on January 31, 1973, the date on which, he said, appellant should have terminated the contract and demanded damages. It was the conclusion of the district judge that appellant had not fulfilled its standard duty of good faith under the Missouri Uniform Commercial Code [3] consisting of " * * * honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." He found that on January 31st appellant knew that appellee could not and would not perform and that the price of soybeans was rising. The judge then went on to say, "Under these circumstances, Bunge's attempt to increase its damages by granting defendant an extension, which Bunge knew would be futile, demonstrates a lack of good faith."

For the purposes of our analysis, the facts are uncontroverted. The parties do not dispute that they intended to enter into and did enter into a written contract. The record is clear that appellee did not perform the contract according to its terms by failing to deliver 10,000 bushels of beans. Appellee's only defense in his pleadings and during the course of trial was that an act of God prevented his performance. Since the beans were not identified other than by kind and amount, we agree with the tri-

---

1. The Honorable H. Kenneth Wangelin filed a memorandum opinion on December 2, 1974, containing his findings of fact and conclusions of law.

2. Under V.A.M.S. [Vernon's Annotated Missouri Statutes] § 400.2–613.

3. V.A.M.S. § 400.2–103(1)(b).

al judge that the destruction by weather did not constitute an act of God which would excuse performance under either the provisions of the Missouri Uniform Commercial Code or the decisional law of that state. V.A.M.S. § 400.2–613;[4] *St. Joseph Hay & Feed Co. v. Brewster*, 195 S.W. 71 (Mo.App.1917).

■ Assuming, *arguendo*, that parol evidence was admissible to explain the agreement, the appellee is faced with the finding of the court on the facts before it that the beans were not identified. Moreover, appellee's attempt to show that the 10,000 bushels of beans were to be produced on an identified acreage flies in the face of the agreement, which provided, among other things:

> 9. Seller warrants that the commodity delivered under this contract was grown within the boundry [sic] of the continental United States.

Obviously, appellee could have fulfilled its contractual obligation by acquiring the beans from any place or source as long as they were grown within the United States. To permit the introduction of parol evidence to show that the beans were to be grown on a particular acreage would completely circumvent the provisions of V.A.M.S. § 400.2–202.[5] Consequently, we are in total agreement with the district judge in his finding and conclusion that appellee was liable in damages for breach of the contract.

■ However, on this record, we disagree with the district judge on the proper method to be applied in the assessment of damages. In utilizing January 31, 1973, as the cut-off date, the district judge employed the good faith provisions of V.A.M.S. § 400.1–203.[6] He invoked the provisions of this statute despite the admitted fact that appellee failed to assert lack of good faith as an affirmative defense. During the trial appellee was relying on an act of God, rather than on an act of bad faith on the part of appellant. Assuming, without deciding, that appellant's grant of an extension of time in which to deliver the beans was given in bad faith, nonetheless, such a claim should have been affirmatively asserted in the answer by appellee.

Fed.R.Civ.P. 8(c) provides, among other things:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, *fraud*, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any*

**4.** 400.2–613 *Casualty to identified goods*

Where the contract requires for its performance goods *identified* when the contract is made, and the goods suffer casualty without fault of either party before the risk of loss passes to the buyer, or in a proper case under a 'no arrival, no sale' term (section 400.2–324) then
(a) if the loss is total the contract is avoided; and
(b) if the loss is partial or the goods have so deteriorated as no longer to conform to the contract the buyer may nevertheless demand inspection and at his option either treat the contract as avoided or accept the goods with due allowance from the contract price for the deterioration or the deficiency in quantity but without further right against the seller. [Emphasis supplied.]

**5.** 400.2–202 *Final written expression—parol or extrinsic evidence*

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
(a) by course of dealing or usage of trade (section 400.1–205) or by course of performance (section 400.2–208); and
(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

**6.** 400.1–203 *Obligation of good faith*

Every contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement.

*other matter constituting an avoidance or affirmative defense.* [Emphasis supplied.]

V.A.M.S. § 509.090, the Missouri statute on the subject, is identical to Fed.R. Civ.P. 8(c).

The definition of "good faith" in V.A. M.S. § 400.2–103(1)(b)[7] is nothing less than the commonplace meaning of the words. The courts repeatedly have said that "good faith" is the precise opposite of "bad faith." *State v. Shipman*, 202 N.C. 518, 163 S.E. 657, 659 (1932); *State ex rel. Millice v. Peterson*, 36 Ind.App. 269, 75 N.E. 602, 605 (1905). Many other courts have held that bad faith is synonymous with "fraud." *Frick v. McClelland*, 384 Pa. 597, 122 A.2d 43, 45 (1956); *Commonwealth v. Smith*, 242 Ky. 365, 46 S.W.2d 474, 478 (1923); *State ex rel. Millice v. Peterson, supra* ; *Pabst Brewing Co. v. Nelson*, 108 Okl. 286, 236 P. 873, 875 (1925); *State v. Shipman, supra* ; *Polikoff v. Finance Service Co.*, 205 N.C. 631, 172 S.E. 356, 358 (1934). Bad faith generally implies or involves actual or constructive fraud or a design to mislead or deceive another. It is an action not prompted by an honest mistake but rather by some interested or sinister motive. We are convinced that a lack of "good faith" as defined in the Code means some type of affirmative action consisting of at least constructive fraud or a design to mislead or to deceive another. Consequently, the "good faith" issue decided by the district judge would seem to be covered by the word "fraud" in Rule 8(c), Fed.R.Civ.P. In any event, the lack of good faith, being closely associated with fraud or constructive fraud, would most certainly fall within the catch-all provision of the rule including " * * * any other matter constituting an avoidance or affirmative defense."

Since the Missouri rule on the same subject, V.A.M.S. § 509.090, is identical with Rule 8(c), Fed.R.Civ.P., we have no concern with whether state or federal law should govern our decision. We believe it is controlled by state law under the guidelines announced in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Fort Dodge Hotel Co. v. Bartelt*, 119 F.2d 253, 258 (8th Cir. 1941). Under either rule, the defense which formed the foundation for the district court's decision must be alleged as an affirmative defense.

Aside from the provisions of the rule, the Missouri decisional law supports the traditional common law rule that all matters in avoidance must be specially pleaded. *Prewitt v. Witte*, 224 Mo.App. 836, 26 S.W.2d 1020, 1023 (1930). Regardless of the approach we take to the record before us, we eventually arrive at the conclusion that appellant was entitled to notice of the defense of lack of good faith.

Inasmuch as the pleadings failed to charge appellant with the lack of good faith eventually found by the court, and because the issue was not explored and tried in the trial court with adequate notice to appellant, the judgment below must be vacated and the cause remanded with appellee granted permission to amend its pleading to raise the good faith issue for trial on that issue alone with a proper assessment of damages.

It is so ordered.

---

7. 400.2–103 *Definitions and index of definitions*

(1) In this article unless the context otherwise requires

\* \* \* \* \* \*

(b) *"Good faith"* in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.